OPINION OF THE COURT
Walter J. Relihan, Jr., J.
*1084 The plaintiffs complaint asserts a plethora of claims, including: battery, fraud, fraudulent concealment, intentional infliction of mental distress, negligent misrepresentation and breach of fiduciary duty. The salient facts are set forth in the April 25, 2005 decision of this court which dismissed claims against the defendant’s supervising lawyer, Carman Garufi, Esq. Succinctly restated, the plaintiff and Simser engaged in sexual relations on two occasions during the course of Simser’s retainer by plaintiff in a domestic relations matter.
The intentional infliction of mental distress remedy has been carefully and narrowly limited in our law to include only such conduct as can be characterized as “so outrageous . . . and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community” (Restatement [Second] of Torts § 46 [1], Comment d; see also Howell v New York Post Co., 81 NY2d 115, 122 [1993]; Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]). The American Law Institute position has been approved and adopted by the Court of Appeals (Freihofer v Hearst Corp., 65 NY2d 135, 143 [1985]).
There is no credible evidence that Simser intended to inflict severe emotional distress upon the plaintiff, had reason to know that his conduct was reasonably certain to have that effect, or did, in fact, commit the tort. The two sexual encounters, in the course of a fully consensual relationship characterized by an exchange of many expressions of loving endearments, fall far short of the required threshold (Zephir v Inemer, 305 AD2d 170 [2003]).
The elements necessary to recover damages for the negligent infliction of emotional distress include a showing of bodily harm or an endangerment of the plaintiffs physical safety (Restatement [Second] of Torts § 436A; and see Hecht v Kaplan, 221 AD2d 100, 105 [1996]). No such evidence exists to support the plaintiffs claim in this regard.
Finally, the emotional damages claimed (i.e., embarrassment, humiliation, etc.) are not supported by competent medical evidence. Glendora v Walsh (227 AD2d 377 [1996]) affirmed the dismissal of emotional distress claims which were supported only by conclusory allegations and which lacked medical verification. A similar result is seen in Callas v Eisenberg (192 AD2d 349, 350 [1993]). The only support for plaintiff’s claims of emotional distress appeared belatedly, and after repeated discovery demands were ignored, in an affidavit submitted by a *1085 social worker in opposition to defendant’s motion and in support of plaintiffs cross motion. The affiant is not a medical doctor, a psychiatrist, a clinical psychologist or a qualified psychiatric social worker. Her opinion was based upon the plaintiff’s own self-serving complaints (see plaintiffs mem of law at 12) with no mention of what accepted objective tests, or other psychosocial criteria, were applied to the plaintiffs complaints. In sum, her qualifications, if any, to make a diagnosis of posttraumatic emotional distress or to render an expert opinion on the matter are exiguous if not totally absent. Opinion testimony from this source would be unreliable and inadmissible.
The punitive damages claim is unsustainable. The affair, while brief, was a joint enterprise. The plaintiffs deposition testimony is ample proof that the “electricity” between the parties was generated with equal enthusiasm by both (Guiles’ deposition at 65). The conduct of defendant in wooing the plaintiff, who fully reciprocated, does not demonstrate conduct punishable by an award of punitive damages (Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603 [1994]). Similarly, the battery complaint must fail since the sexual relationship, plainly, was consensual (Restatement [Second] of Torts § 13, Comment d).
Stripped of these redundancies, the complaint states a cause of action for legal malpractice based upon a breach of fiduciary duty owed by defendant Christopher Simser, Esq., to the plaintiff Janine Guiles, resulting in damages due to emotional distress (Coppersmith v Gold, 172 AD2d 982, 984 [1991]; Brainard v Brown, 91 AD2d 287 [1983]).
The fraud allegations of the complaint claim did not arise from an intentional tort, separate and distinct from his violation of accepted standards of practice in matrimonial cases. Accordingly, these claims fail to state a cause of action in addition to the alleged malpractice (Golia v Health Ins. Plan of Greater N.Y., 7 NY2d 931, 932 [1960]; Coopersmith v Gold, supra at 984; LaBrake v Enzien, 167 AD2d 709 [1990]; Brainard v Brown, supra).
Indeed, all of the lawyer misconduct in this case arose in the course of counseling the client. Hence, no meaningful distinction can be drawn between a claim for breach of fiduciary duty and legal malpractice (Wende C. v United Methodist Church, N.Y. W. Area, 6 AD3d 1047, 1050 [2004] [a position left undisturbed by the Court of Appeals in 4 NY3d 293, 299 (2005)]; cf. Langford v Roman Catholic Diocese of Brooklyn, 177 Misc 2d 897, 898 n 4 [1998]). As noted by the Langford court, all of the *1086 plaintiffs varied causes of action “depend for their vitality on the claim of breach of fiduciary duty.”
The malpractice claim (i.e., breach of fiduciary duty) is based upon the theory that plaintiffs will to resist the defendant’s blandishments was overcome by his aura of legal sapience and quasi-pastoral concern (he had been a lay helper for several local churches) and by her own disabling marital stress. Her sworn testimony, however, suggests a very different scenario: she testified that she and Simser, on visits to his law office, would connive to prevent their fondlings from becoming known to Mr. Garufi, his employer and supervising lawyer. “It was almost a game. It was like we were little kids trying not to get caught doing something. We knew we were doing something we weren’t supposed to be doing” (Guiles’ deposition at 71). It is an inescapable conclusion from these revelations that plaintiff was not a hapless victim of Simser’s manipulative conduct.
The defendant’s conduct, however, clearly violated Code of Professional Responsibility DR 5-111 (b) (3) (22 NYCRR 1200.29-a [b] [3]). Simser was terminated by his supervising lawyer and was reported to the Committee on Professional Standards. The decision of the Committee was not published but, both counsel agree, a private censure was issued and, thereupon, the case was closed.
A violation of a disciplinary rule does not, itself, generate a cause of action in favor of the affected client (Mergler v Crystal Props. Assoc., 179 AD2d 177 [1992]; Brainard v Brown, supra). As emphasized in Mergler (at 183), “the Code of Professional Responsibility was promulgated to establish an ethical standard and to vindicate society’s rights with respect to the conduct of licensed attorneys, not to delineate substantive rules for the adjudication of the private rights, inter se, of parties.” The latest iteration of the ABA Model Rules of Professional Conduct (Preamble and Scope [5th ed 2004]) takes a similar position, stating that “[violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached” (emphasis added).
The former ABA rule was modified in 2002 by the current version which inserted the italicized qualification (i.e., “itself’) and added the following text: “Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer’s violation of a Rule may be evidence of breach of the applicable standard of conduct” (Preamble and Scope para 20). The significance of *1087 this change is not yet clear. No New York case has been brought to our attention which addresses this issue, in the context of a tort action by the client, where the lawyer’s conduct has not led to the client’s disadvantage in relation to the subject matter of the retainer. In short, the question before the court is whether a breach of disciplinary rules, concededly requiring corrective intervention by the profession and the courts, is also sufficient to generate a tort claim, personal to the client.
The prohibition of the initiation of sexual relations between lawyer and client in a domestic relations matter is based upon the now generally-accepted view that such relationships are inherently unequal and that the client, in a divorce situation, is under extraordinary stress and may be emotionally disarmed. The New York Disciplinary Rules make clear that the mere continuance of a romance initiated before the retainer is not barred. This distinction demonstrates that the onset of matrimonial troubles, followed by consultation with a legal guide, is the dependency mechanism which triggers the client’s vulnerability. Lastly, of course, the lawyer is under a fiduciary duty to the client which requires not only an acceptable level of competence in the relevant area of the law but also the exercise of the “highest duty of care” (Black’s Law Dictionary 640 [7th ed] [defining “fiduciary relationship”]).
The ABA/BNA Lawyers’ Manual on Professional Conduct (55:2004 [June 2005]) states: “A lawyer’s sexual relationship with a client typically involves a conflict of interest and a breach of fiduciary duty.” Conflict cases are frequently reported and usually involve a disclosure or misuse of confidential information by a lawyer resulting in some detriment to the client in subsequent litigation (see, for example, Nesenoff v Dinerstein & Lesser, 5 AD3d 746 [2004]). Unlike the typical case contemplated by the Manual, there is no evidence here that defendant misused information disclosed by the client in any manner resulting in a detriment to her legal position or that he bartered his services for sex. Nor is there any proof of damages to the client by reason of erroneous, inadequate or laggardly legal advice or dilatory tactics by the lawyer in dealing with the matter entrusted to him (see an extended discussion of these issues in Vallinoto v DiSandro, 688 A2d 830 [RI Sup Ct 1997]). In short, plaintiff has shown no injury to her position in relation to her case.
Where no such detriment can be shown, and where the only apparent injury to the client is emotional, we are left with a complaint which occupies the same ground as the former action *1088 for seduction. That cause of action has been repealed as exploitive and often extortionate (Civil Rights Law § 80-a). Prosser and Keeton, Torts § 124 (at 929 [5th ed]) describes the action for seduction as notoriously misused. The authors also note (§ 124, at 930) that “[t]he trend against such action[ ] has moved slowly, but in the light of increased emphasis in our society on personal choice . . . and scepticism about the role of law in protecting feelings and enforcing highly personal morality, it seems doubtful that the trend will be reversed.”
Under these circumstances, and even assuming a breach of duty by Simser in the form of a violation of DR 5-111 (b) (3) (22 NYCRR 1200.29-a [b] [3]), it is not clear what remedy, at law or in equity, could be rendered to plaintiff by the court in the event of trial except such emotional distress damages (or heart balm, in the parlance of that bygone era) as would have been available, before repeal, in the much reviled cause of action for seduction. Meantime, Simser lost his position at Mr. Garufi’s law office and was subjected to such disciplinary measures as the Committee on Professional Standards deemed necessary and appropriate.
The court shares the plaintiffs reprehension that a member of the bar has broken the rules and caused her personal embarrassment and chagrin. But the offender has been punished and plaintiff has failed to demonstrate an injury, in the nature of verifiable and compensable emotional distress, or any legal detriment caused by Simser’s behavior. Thus, she has not stated a cognizable claim.
The defendant’s motion to dismiss the complaint is granted. The plaintiffs cross motion for summary judgment is denied.