[892 NE2d 375, 862 NYS2d 311]

ADINA MARMELSTEIN, Appellant, v KEHILLAT NEW HEMPSTEAD: THE RAV ARON JOFEN COMMUNITY SYNAGOGUE, Defendant, and MORDECAI TENDLER, Respondent.

Argued June 3, 2008; decided June 25, 2008

**POINTS OF COUNSEL**

*Kramer & Dunleavy, L.L.P.*, New York City (*Lenore Kramer* and *Jonathan R. Ratchik* of counsel), for appellant. I. The First Department erred when it held that defendant-respondent did not stand in a fiduciary relation with plaintiff-appellant and did not owe her a duty not to abuse their relationship of trust and confidence. (*Fearon v Treanor*, 272 NY 268; *Aadland v Flynn*, 27 Misc 2d 833, 14 AD2d 837; *Roy v Hartogs*, 85 Misc 2d 891; *Tuck v Tuck*, 14 NY2d 341; *Penato v George*, 52 AD2d 939; *Noto v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 142 Misc 2d 292; *Matter of Reddy v State Bd. for Professional Med. Conduct*, 259 AD2d 847; *Matter of Morrison v DeBuono*, 255 AD2d 710.) II. New York State should recognize the existence of a fiduciary relationship between a cleric and a parishioner. (*Wende C. v United Methodist Church, N.Y. W. Area*, 4 NY3d 293; *Langford v Roman Catholic Diocese of Brooklyn*, 271 AD2d 494; *Sanders v Casa View Baptist Church*, 134 F3d 331.) III. The First Department erred when it held that plaintiff-appellant's cause of action for intentional infliction of emotional distress was barred by the Civil Rights Law. (*Murphy v American Home Prods. Corp.*,

58 NY2d 293; *Noto v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 142 Misc 2d 292, 160 AD2d 656; *Sanchez v Orozco*, 178 AD2d 391; *Shannon v MTA Metro-N. R.R.*, 269 AD2d 218; *Roy v Hartogs*, 85 Misc 2d 891; *Tuck v Tuck*, 14 NY2d 341.)

*Richard H. Bliss*, New York City, and *Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, White Plains, for respondent. I. The Appellate Division correctly determined that plaintiff-appellant's remaining claims for breach of fiduciary duty and intentional infliction of emotional distress were thinly-veiled claims of seduction barred by Civil Rights Law § 80-a. (*Gaden v Gaden*, 29 NY2d 80; *Coopersmith v Gold*, 172 AD2d 982; *Parker v Hoefer*, 2 NY2d 612; *Sahid v Chambers*, 237 AD2d 175, 90 NY2d 805; *Licata v Kelley*, 217 AD2d 973; *Roney v Janis*, 77 AD2d 555, 53 NY2d 1025; *Wende C. v United Methodist Church, N.Y. W. Area*, 6 AD3d 1047, 4 NY3d 293, 546 US 818; *Aadland v Flynn*, 27 Misc 2d 833, 14 AD2d 837; *Roy v Hartogs*, 85 Misc 2d 891; *Tuck v Tuck*, 14 NY2d 341.) II. The complaint fails to state a cause of action for breach of fiduciary duty. (*Zumpano v Quinn*, 6 NY3d 666; *Wende C. v United Methodist Church, N.Y. W. Area*, 4 NY3d 293, 546 US 818; *Langford v Roman Catholic Diocese of Brooklyn*, 271 AD2d 494; *Matter of Clara C. v William L.*, 96 NY2d 244; *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11; *Penato v George*, 52 AD2d 939, 42 NY2d 908; *United States v Chestman*, 947 F2d 551, 503 US 1004; *Doyle v Turner*, 90 F Supp 2d 311, *affd sub nom. Hughley v Local 1199, Drug, Hosp. & Health Care Empls. Union, RWDSU*, 231 F3d 889; *Sears v First Pioneer Farm Credit, ACA*, 46 AD3d 1282; *Johnston v De-Haan*, 37 AD2d 1028.) III. The cause of action for intentional infliction of emotional distress was properly dismissed. (*Howell v New York Post Co.*, 81 NY2d 115; *Murphy v American Home Prods. Corp.*, 58 NY2d 293; *Burlew v American Mut. Ins. Co.*, 63 NY2d 412; *Freihofer v Hearst Corp.*, 65 NY2d 135; *Fischer v Maloney*, 43 NY2d 553; *Sheila C. v Povich*, 11 AD3d 120; *Maas v Cornell Univ.*, 94 NY2d 87; *Gertler v Goodgold*, 107 AD2d 481, 66 NY2d 946; *Lightman v Flaum*, 278 AD2d 373, 97 NY2d 128, 535 US 1096; *Noto v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 142 Misc 2d 292, 160 AD2d 656.)

### OPINION OF THE COURT

Graffeo, J.

This case requires us to consider whether the allegations in the complaint establish a viable cause of action for breach of fiduciary duty against a cleric premised on an alleged $3^{1}/_{2}$-year

sexual relationship between consenting adults. We agree with the Appellate Division that the complaint must be dismissed.

I

Plaintiff Adina Marmelstein commenced this lawsuit in December 2005 against defendant Mordecai Tendler (an Orthodox Jewish rabbi) and his employer, defendant Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue (KNH). The causes of action set forth in the complaint stem from an intimate relationship that allegedly occurred between Tendler, the founder and leader of KNH, and Marmelstein. According to Marmelstein, Tendler had cultivated a reputation as an educator and scholar within the Orthodox community, with particular expertise in women's issues. Marmelstein and Tendler first became acquainted in 1994, when she began to contact him by telephone to discuss "various personal issues." The following year, Tendler initiated efforts to recruit Marmelstein to join KNH's congregation and, in September 1996, she began to attend services at his synagogue.

Marmelstein claims that during this period, Tendler counseled and advised her on a variety of personal, legal and financial problems, including her desire to find a husband and have children. The complaint states that Tendler enticed Marmelstein by telling her that she was his "favorite" and "closest," and that he "would 'be there' for all of her needs." She claims that as a "relationship of confidence and trust" developed, Tendler acted as "an advisor, a father figure and a god," telling her that he "was as close to God as anyone could get," that he "talks to God all the time" and that he was, in fact, "the Messiah."

Regarding her marital status concerns, Marmelstein recounts that Tendler explained that she was "closed to the possibility of finding a husband" and her "only hope" was to engage in a sexual relationship with him, which would "open her up to the world" in order to become more attractive to men. The complaint characterizes this as a "course of sexual therapy" suggested by Tendler to assist Marmelstein in her quest to attain marriage and a family. Marmelstein acknowledges that she acquiesced and began a sexual relationship with Tendler in November 2001, continuing to May 2005.

During their relationship, Marmelstein contends that Tendler intimidated her by his declarations that if she disclosed their sexual arrangement to anyone, he would "have her placed in a straight jacket," "have her banned from the shul (synagogue)"

and "turn the community against her." After the affair ended, Marmelstein alleges that her reputation was impugned by Tendler to the extent that she lost her standing in her religious community and left the synagogue.

There are five causes of action in Marmelstein's complaint. The first claim, premised on fraud, maintains that Tendler intentionally deceived her and induced her to engage in sexual relations that she would not have consented to if she had known that the "therapy" he advised was "solely for his personal pleasure and gratification." In her second cause of action, Marmelstein asserts that Tendler "occupied a position as fiduciary" because he was her "counselor, advisor and therapist," and that Tendler breached his fiduciary duty. The third and fourth causes of action, for intentional and negligent infliction of emotional distress, state that Tendler encouraged the congregants of KNH to "harass, threaten and intimidate" Marmelstein, and that Tendler "engaged in a concerted scheme to embarrass, humiliate and diminish" her such that she was ostracized from the community. The fifth cause of action is directed against KNH for negligently retaining Tendler as the synagogue's rabbi.

Tendler denied all of Marmelstein's allegations and moved to dismiss the complaint on two grounds—failure to state a cause of action and that the action was barred by the statute of limitations. Supreme Court dismissed the fraud claim as a veiled attempt to plead a seduction cause of action prohibited by Civil Rights Law § 80-a.[1] With respect to the breach of fiduciary duty claim, the court rejected Tendler's argument that the claim was precluded by the First Amendment because Marmelstein sought advice on how to find a husband, not on religious or spiritual matters and, therefore, a jury would not be asked whether Tendler acted in accord with religious doctrine. The court did, however, hold that the three-year statute of limitations applied to this claim, and restricted the breach of fiduciary duty allegations to conduct occurring after December 2002. Supreme Court also declined to dismiss the intentional infliction of emotional distress and negligent retention causes of action; the court

---

1. This statute, addressing causes of action for "alienation of affections, criminal conversation, seduction, or breach of contract to marry," is referred to as the "heart balm" statute and provides, in pertinent part: "The rights of action to recover sums of money as damages for alienation of affections, criminal conversation, seduction, or breach of contract to marry are abolished. No act done within this state shall operate to give rise, either within or without this state, to any such right of action" (Civil Rights Law § 80-a).

dismissed the negligent infliction of emotional distress claim for lack of an allegation that Tendler committed any negligent acts.

On appeal, the Appellate Division dismissed the two remaining causes of action—breach of fiduciary duty and intentional infliction of emotional distress—concluding that both were barred by Civil Rights Law § 80-a. In addressing the breach of fiduciary duty claim, the Appellate Division determined that cause of action failed because the complaint contained only general allegations that were insufficient to demonstrate the existence of a true fiduciary relationship.[2] Two Justices dissented, finding that Marmelstein's allegations were not seduction claims and that she had adequately pleaded a fiduciary bond with Tendler. Marmelstein appeals as of right, and we now affirm.

## II

This is not the first occasion we have had to consider civil actions based on allegations of misconduct by members of the clergy. In *Lightman v Flaum* (97 NY2d 128 [2001], *cert denied* 535 US 1096 [2002]), we were asked whether civil liability could be imposed under CPLR 4505 against a cleric for the disclosure of confidential communications. In rejecting the notion that the statutory cleric-penitent privilege created a fiduciary relationship, we noted that a cause of action for clergy malpractice had "troubling constitutional implications" under the First Amendment where the finder of fact would be required to decide whether a cleric's actions comported with religious doctrine (*id.* at 137). More recently, in *Wende C. v United Methodist Church, N.Y. W. Area* (4 NY3d 293 [2005], *cert denied* 546 US 818 [2005]), the plaintiff asserted that her pastor had engaged in sexual relations with her during a course of marital counseling, while " 'acting within the authority granted to him by the defendant Church . . . under the guise of his role as pastor in the ministerial relationship between himself and . . . a congregant, and [in] his position as a responsible member of the clergy' " (*id.* at 299). In resolving this case, we left open the question whether sexual misconduct by a cleric could be redressed under an alternative theory of breach of fiduciary duty because the allegations in the complaint sounded in clergy malpractice and

---

**2.** Marmelstein did not appeal Supreme Court's rejection of the fraud and negligent infliction of emotional distress causes of action. The lack of a viable cause of action against Tendler necessarily caused the negligent retention claim against KNH to fail, so all parties recognize that cause of action as being dismissed.

involved the examination of ecclesiastical doctrine to establish "the standard of due care owed to parishioners undergoing ministerial counseling" (*id.*)—the precise concern expressed in *Lightman*.

Here, Marmelstein attempts to avoid these First Amendment entanglement problems—she does not specifically refer to Tendler as a rabbi and the complaint does not state that a ministerial relationship existed between Marmelstein and Tendler, or that the counsel Tendler provided to Marmelstein was guided or influenced by religious beliefs. Like the Appellate Division, we view the absence of such allegations as unusual given that Tendler is the spiritual leader of a synagogue and Marmelstein claims that Tendler's control over his community "permeate[d] all aspects of life, both religious and nonreligious, including personal, family, business and other lifestyle issues."

██ Even assuming that Marmelstein has surmounted First Amendment barriers, we conclude that her breach of fiduciary duty cause of action fails for another reason: the facts asserted insufficiently demonstrate that she developed a fiduciary relationship with Tendler. "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation' " (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005], quoting Restatement [Second] of Torts § 874, Comment *a*). Whether a fiduciary relationship has been established is an inquiry that is "necessarily fact-specific" (*id.*). In undertaking that determination, we have noted that two "essential elements of a fiduciary relation are . . . 'de facto control and dominance' " (*Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d 158, 173 [1993, Hancock, J., dissenting], quoting *United States v Reed*, 601 F Supp 685, 708 [SD NY], *revd on other grounds* 773 F2d 477 [2d Cir 1985], quoting *United States v Margiotta*, 688 F2d 108, 125 [2d Cir 1982], *cert denied* 461 US 913 [1983], *overruled on other grounds by McNally v United States*, 483 US 350 [1987]).

Marmelstein claims that Tendler held himself out as a counselor and advisor and that he provided those services to her. But these general assertions alone are inadequate to cast Tendler as a fiduciary beyond that of ordinary cleric-congregant affiliations. Nor can Marmelstein show that a duty existed by merely stating, in a conclusory fashion, that Tendler acted as a fiduciary and that a relationship of trust existed. Rather, it is essential that a plaintiff articulate specific facts that will allow a

court to distinguish a viable claim of breach of fiduciary duty from nonactionable seductive conduct, however reprehensible the offending conduct may be.

Allegations that give rise to only a general clergy-congregant relationship that includes aspects of counseling do not generally impose a fiduciary obligation upon a cleric. To establish that a course of formal counseling resulted in a cleric assuming "de facto control and dominance" over the congregant (*Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d at 173 [internal quotation marks omitted]), a congregant must set forth facts and circumstances in the complaint demonstrating that the congregant became uniquely vulnerable and incapable of self-protection regarding the matter at issue.[3]

Judged by this standard, Marmelstein's allegations fall short of a cause of action for breach of fiduciary duty. The facts alleged and the inferences derived therefrom demonstrate that Marmelstein voluntarily consented to a 3½-year intimate relationship with Tendler because she subjectively believed that the "therapy" he suggested would help her find a husband. Although she contends that Tendler's ulterior motive for inducing the sexual relationship was the fulfillment of his own gratification, rather than the achievement of Marmelstein's goals, Marmelstein has shown only that she was deceived by Tendler, not that she was so vulnerable as to surrender her will and capacity to determine her own best interests. In the absence of a prima facie showing that a fiduciary obligation was owed by Tendler, no cause of action can be maintained for an extended voluntary sexual affair between consenting adults, even if Marmelstein could prove that her acquiescence was obtained through lies, manipulation or other morally opprobrious conduct (*see* Civil Rights Law § 80-a).[4]

Marmelstein's argument seeking to reinstate her cause of action for intentional infliction of emotional distress is also without merit. The complaint does not establish that Tendler's conduct was " 'so outrageous in character, and so extreme in

---

3. This is not to suggest that a cleric who is also a licensed professional, such as a psychiatrist, psychologist or attorney, could not assume fiduciary obligations under existing laws and the secular standards that govern the practice of those professions.

4. Of course, there is a critical difference in the viability of a civil action premised on sexual contact between a cleric and a person who is incapable of consent, such as a minor (*see e.g. Martinelli v Bridgeport R.C. Diocesan Corp.*, 196 F3d 409 [2d Cir 1999]).

degree, as to go beyond all possible bounds of decency . . . and [was] utterly intolerable in a civilized community' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment *d*).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.