OPINION OF THE COURT
Walter B. Tolub, J.
The motions presented for resolution before this court require the consideration of two interesting issues. The first is whether plaintiff may maintain a claim of breach of fiduciary duty against one of the (former) ministers of her church. The second, and by far the more unique issue, is whether the distribution of information disclosing plaintiffs criminal record to a religious congregation, alleged to have been orchestrated and carried out by the defendants, constitutes “extreme and outrageous behavior” thereby allowing plaintiff to maintain a prima facie cause of action for intentional infliction of emotional distress.
Plaintiff, Constance Guice-Mills, has enjoyed a relationship with the Riverside Church in Manhattan since 1973 (plaintiffs affidavit in opposition 11 2). Between the mid-1980s and the end of 2002, plaintiff had taken a more active role in the church, and was involved in many of its activities. In 1989, defendant Dr. James A. Forbes, Jr. was hired by the church as its principal minister. Plaintiff claims that she became friends with defendant Forbes, and later, because of her background in psychiatry, defendant Forbes sought advice from her on church and personal matters (plaintiffs affidavit in opposition 1i 11). It was during these private conversations that plaintiff claims that she shared information concerning her personal life, and her strategies for dealing with her own personal challenges (id. 1Í 12). Plaintiff characterizes defendant Forbes as being her “friend, confidant, as well as [her] Pastor and spiritual counselor” (id. H 12).
*601 In 1997, plaintiff, in an unrelated matter, was convicted of criminal mischief. During the two-year course of her criminal proceeding, defendant Forbes counseled plaintiff and attended court with her in his capacity as friend and pastor.
In 2002, plaintiff claims that copies of her conviction record were circulated throughout the church staff and congregation in an deliberate attempt to humiliate her and intimidate her from further criticizing defendant Forbes’ management of the church.[1] Plaintiff contends that this information was intentionally disseminated by defendant Forbes and defendant Frank Boone, a church employee.
On November 19, 2002, plaintiff commenced this action. The complaint, comprising two causes of action, seeks to recover as against both defendants for intentional infliction of emotional distress, and for breach of fiduciary duty as against defendant Forbes. By this motion, defendant Forbes moves for summary judgment and dismissal of plaintiff’s complaint. Defendant Boone cross-moves for similar relief.
Discussion
Motions for summary judgment limit this court’s role to finding issues, and not resolving them. To succeed, it is therefore incumbent upon the movant to provide the court with admissible evidence sufficient to demonstrate an absence of any triable issues of fact, thereby demonstrating entitlement to judgment as a matter of law (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; see generally 2 Barr, Altman, Lipshie, and Gerstman, New York Civil Practice Before Trial § 37:91-37:92 [James Publ 2007]). The opposing party bears the burden of producing evidentiary proof in admissible form that is sufficient to establish the existence of material issues of fact requiring trial. Mere conclusions, expressions of hope, or unsubstantiated allegations are insufficient for this purpose (Zuckerman v City of New York, 49 NY2d 557 [1980]), and, if there is any doubt that triable issues of fact exist, summary judgment will not be granted.
*602 As a preliminary matter, contrary to defendant Forbes’ lengthy characterization in his motion papers,[2] the only causes of action contained within plaintiffs complaint are those giving rise to claims of intentional infliction of emotional distress and breach of fiduciary duty. There are no causes of action sounding in intentional tort, defamation, or otherwise, and this court will not entertain an analysis of those areas of law.
Secondly, counsel for defendant Forbes, although not expressing this desire in the notice of motion for summary judgment, additionally seeks dismissal of this action predicated upon the claim that applicable statutes of limitations were violated, and, to some extent, for failure to properly effectuate service of the summons and complaint upon his client. Both of these arguments are without merit. Not only was the action timely commenced as to both asserted causes of action,[3] defendant Forbes answered plaintiff’s complaint in September of 2003. Said answer, which does not include a jurisdictional defense, constitutes an appearance under CPLR 320 (a) (see Urena v NYNEX, Inc., 223 AD2d 442 [1st Dept 1996]). Simply put, defendant Forbes cannot now, in 2008, argue that he was somehow improperly served in this action.
Breach of Fiduciary Claim
Whether formal or informal, a fiduciary relationship is one which is “founded upon trust or confidence reposed in one person in the integrity and fidelity of another” (Apple Records v Capitol Records, 137 AD2d 50, 57 [1st Dept 1988], citing Cody v Gallow, 28 Misc 2d 373 [1961]). It only exists however, when one of the parties is “under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation” (Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue, 11 NY3d 15, 21 [2008], quoting EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005] [citations omitted]). The inquiry into whether such a relation *603 ship exists is therefore fact-specific, and focuses largely on whether there exists reliance, de facto control and dominance within the relationship (Marmelstein, 11 NY3d 15, 21 [2008]; AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 11 NY3d 146 [2008]; Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 173 [1993]).
While courts may decide secular disputes involving religious institutions on neutral principles of law (see Vione v Tewell, 12 Misc 3d 973 [Sup Ct, NY County 2006]; Avitzur v Avitzur, 58 NY2d 108 [1983]; Park Slope Jewish Ctr. v Congregation B’nai Jacob, 90 NY2d 517 [1997]; Berger v Temple Beth-El of Great Neck, 303 AD2d 346 [2d Dept 2003]), to date, the Court of Appeals has left open the question as to whether a viable claim for breach of fiduciary duty may independently exist as against a member of the clergy.[4] The Court’s reluctance is derived from the concern over the fact that the very nature of this type of claim would likely require the interpretation of religious doctrine, thereby creating troubling constitutional implications under the First Amendment (see Lightman v Flaum, 97 NY2d 128, 137 [2001]; Marmelstein, 11 NY3d 15, 21 [2008]; Wende C. v United Methodist Church, N.Y. W. Area, 4 NY3d 293 [2005], cert denied 546 US 818 [2005]).
This is not to say that a claim for breach of fiduciary duty as against a member of the clergy is destined to fail in this state. Success based on prevailing case law however, requires the plaintiff to reach an exacting standard. As set forth by the Marmelstein Court,
“[allegations that give rise to only a general clergy-congregant relationship that includes aspects of counseling do not generally impose a fiduciary obligation upon a cleric. To establish that a course of formal counseling resulted in a cleric assuming ‘de facto control and dominance’ over the congregant (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 173 [internal quotation marks omitted]), a congregant must set forth facts and circumstances in the complaint demonstrating that the congregant became uniquely vulnerable and incapable of self- *604 protection regarding the matter at issue.” (Marmelstein, 11 NY3d 15, 22 [2008].)
Unlike Marmelstein and its predecessors, the instant case is not one which is borne out of claims of clergy sexual misconduct.[5] Plaintiffs claim of breach of fiduciary duty arises out of the claim that defendant Forbes learned of plaintiffs criminal record[6] while acting as her pastor, and then intentionally distributed that information to the church congregation.[7] What is missing from plaintiffs complaint and the record as a whole, however, are the kinds of facts and other evidentiary support necessary under Marmelstein establishing that plaintiff, as a congregant, became uniquely vulnerable and incapable of self-protection as a result of her relationship with defendant Forbes.[8] As such, in the absence of this evidence the portion of the motion advanced by defendant Forbes seeking summary judgment and dismissal of plaintiffs complaint as it pertains to the asserted claim of breach of fiduciary duty is warranted, and the relief sought is granted.
Intentional Infliction of Emotional Distress
The balance of the cross motions before this court address the issue of whether either defendant may be held civilly liable under a theory of intentional infliction of emotional distress *605 based on the public circulation of plaintiff’s criminal record throughout the church congregation.
Imposition of liability for the intentional infliction of emotional distress requires a demonstration that a defendant’s conduct was (1) extreme and outrageous, (2) intended to cause severe emotional distress, (3) formed the nexus between the conduct and the injury, and (4) resulted in severe emotional distress (Howell v New York Post Co., 81 NY2d 115, 121 [1993]). The lack of proscribed conduct renders the tort “as limitless as the human capacity for cruelty” (id. at 122). As such, success turns on whether the conduct complained of is extreme, amounting to more than mere threats or annoyances, and ultimately, “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community” (Fischer v Maloney, 43 NY2d 553, 557 [1978], quoting Restatement [Second] of Torts § 46, Comment d; Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]).[9]
Indeed, the threshold of outrageousness is so difficult to attain, that of the intentional infliction of emotional distress claims considered by the Court of Appeals, “every one has failed because the alleged conduct was not sufficiently outrageous” (Seltzer, 272 AD2d at 264, quoting Howell, 81 NY2d at 122). Those claims for this intentional tort which have been successful have been generally limited to those which have been “supported by allegations detailing a longstanding campaign of deliberate, systematic and malicious harassment of the plaintiff” (Seltzer, 272 AD2d at 264-265).[10]
*606 Review of the record in the instant case reveals that plaintiff is faced with several obstacles with respect to her intentional tort claim, at least two of which are, as deemed by this court, insurmountable. By far, the most problematic obstacle is the simple fact that the document distributed here, plaintiffs criminal record, is a public document. The distribution of this record, while perhaps embarrassing, on its own carries no constitutional right to privacy (see Cline v Rogers, 87 F3d 176, 179 [6th Cir Tenn 1996] [“one’s criminal history is arguably not a private ‘personal matter’ at all, since arrest and conviction information are matters of public record”]; Whalen v Roe, 429 US 589, 599 [1977]; Paul v Davis, 424 US 693 [1976]).
The second obstacle is the record reflects that despite the completion of significant discovery, plaintiff remains unable to form the requisite causal link between either defendant and the actual distribution of the document. Plaintiffs own deposition testimony indicates that she did not know who had obtained her criminal record, who had distributed the copies, or how the information retrieval and dispersion had been accomplished (see plaintiffs deposition tr at 65, 77-79, 126, 137-138, 149). Not only is plaintiffs testimony largely conclusory in nature, it is also further diluted by the testimony of other deponents, much of which suggests that plaintiffs criminal conviction was known to multiple individuals associated with the church for some time prior to the complained of events (see collectively the papers for motion sequence No. 005).
Collectively, this evidence places the court in a difficult position. The court is by no means unsympathetic to plaintiff’s plight. Clearly, someone obtained copies of plaintiffs criminal record and intentionally distributed them in an attempt to embarrass her. The timing of the claimed distribution is such that it begs the question as to whether perhaps the distribution *607 of this information was related to other very public church disputes. But under the law, to prevail on a cause of action for intentional infliction of emotional distress and, more particularly, to survive a motion for summary judgment, plaintiff must meet all four elements enunciated in Howell and its progeny with proof amounting to more than mere conclusions, expressions of hope, or unsubstantiated allegations (Zuckerman, 49 NY2d 557 [1980]). This simply has not been accomplished on the record before this court. As such, the balance of the cross motions advanced respectively by defendant Forbes and defendant Boone are granted.
Inasmuch as this court deems summary judgment warranted on the aforementioned grounds, it declines to discuss those arguments raised by the parties pertaining to issues of spoliation.
Accordingly, it is ordered that the motion advanced by defendant Reverend Dr. James A. Forbes, Jr. seeking summary judgment and dismissal of plaintiffs complaint is granted; and it is further ordered that the cross motion advanced by defendant Frank Boone seeking summary judgment and dismissal of plaintiffs complaint is granted; and it is further ordered that the complaint is deemed dismissed; and it is further ordered that the clerk is directed to enter judgment accordingly.

. The alleged mismanagement of church funds by defendant Forbes was the source of much criticism in the early 2000s and was featured in a 2002 New York Times article written by nonparty witness Daniel J. Wakin. Mr. Wakin’s deposition was directed in this case because while interviewing defendant Forbes and two other church officials in July of 2002, plaintiffs criminal conviction was revealed to Mr. Wakin. Mr. Wakin did not include this information in his article (see motion sequence No. 003, decision dated 2006).

. Counsel is cautioned that in the future, in the absence of the express approval of this court, portions of affidavits and memoranda exceeding the maximum length prescribed by the Rules of the Justices of the Supreme Court will not be considered (see http://www.courts.state.ny.us/supctmanh/ UNIFrules.2008.42308.pdf).

. The applicable statute of limitations for a claim of intentional infliction of emotional distress, an intentional tort, is one year (CPLR 215). The applicable statute of limitations for a claim of breach of fiduciary duty in cases seeking monetary damages is three years (see Papp v Debbane, 16 AD3d 128 [1st Dept 2005]).

. It is noted that the courts of this state have declined to find the existence of a fiduciary duty in connection with CPLR 4505 (see Lightman v Flaum, 97 NY2d 128 [2001] [statute creating clergy-penitent privilege within New York rules of evidence does not create a fiduciary duty subjecting members of the clergy to civil liability for disclosure of confidential communications]).

. The court notes that the vast majority of all of the cases addressing causes of action for breach of fiduciary duty against members of the clergy, including Lightman (97 NY2d 128 [2001]), Marmelstein (11 NY3d 15 [2008]), and Wende C. v United Methodist Church, N.Y. W. Area (4 NY3d 293 [2005]), involve some form of clergy sexual misconduct.

. The court further notes that the criminal record involved in this action is a public record.

. Plaintiffs complaint, in pertinent part, reads as follows:
“9. The distribution of the record of plaintiffs conviction for criminal mischief was in breach of defendant Forbes’ fiduciary obligations as her minister, including his obligations to keep confidential his communications with her in his pastoral capacity.
“10. As a result of this breach of fiduciary obligations, plaintiff has suffered severe emotional distress, embarrassment, loss of sleep, loss of appetite and other psychological injuries.” (Complaint HH 9, 10.)

. The court notes that plaintiffs case thus fails not because of an excessive entanglement with the First Amendment, but because, as with the plaintiff in Marmelstein, the facts as asserted within the complaint failed to demonstrate the existence of a fiduciary relationship. “Judged by this standard, Marmelstein’s allegations fall short of a cause of action for breach of fiduciary duty . . . Marmelstein has shown only that she was deceived by Tendler, not that she was so vulnerable as to surrender her will and capacity to determine her own best interests” (Marmelstein, 11 NY3d 15, 22 [2008]).

. (See also e.g. Seltzer v Bayer, 272 AD2d 263, 264 [1st Dept 2000] [allegations of vandalism (tossing lighted cigarettes and eggs into plaintiff’s yard) and threats of vandalism (threatening to paint a swastika on the front of plaintiffs home) not enough to be held as outrageous conduct]; Zimmerman v Carmack, 292 AD2d 601 [2d Dept 2002] [allegations of excessive noise and intentional accumulation of dog waste, rotting food, and garbage did not impose liability for intentional infliction of emotional distress, but rather stated a claim for trespass]; Owen v Leventritt, 174 AD2d 471 [1st Dept 1991] [threat made to kill plaintiff at meeting where plaintiff was not present was not outrageous conduct to support claim of intentional infliction of emotional distress]; see also Roth v El Al Israel Airlines, Ltd., 709 F Supp 487, 490-491 [1989]; James v Saltsman, 99 AD2d 797, 798 [2d Dept 1984]; Sirianni v Rafaloff, 284 AD2d 447 [2d Dept 2001].)

. (See also Shannon v MTA Metro-N. R.R., 269 AD2d 218 [1st Dept 2000] [detailed pattern of harassment, intimidation and humiliation contributed to psychological and emotional distress of employee over several years]; Warner v Druckier, 266 AD2d 2 [1st Dept 1999] [plaintiffs injury as a *606 tenant was established through demonstrated systematic and malicious harassment by defendants]; but compare Roach v Stern, 252 AD2d 488 [2d Dept 1998] [trial court erred in determining element of outrageous conduct was not satisfied as a matter of law. Question of fact existed as to whether how human remains were handled for entertainment purposes and against wishes of the decedent’s family went beyond the bounds of decency]; Vasarhelyi v New School for Social Research, 230 AD2d 658 [1st Dept 1996] [hiring of criminal attorney to investigate plaintiff by academic institution’s president for groundless litigation sufficiently outrageous]; Cavallaro v Pozzi, 28 AD3d 1075 [2006] [claim that defendant engaged in constant campaign of intimidation and harassment which included threatening to kill plaintiff and his children raised a triable issue of fact as to whether conduct rose to requisite level of outrageousness].)