OPINION OF THE COURT
Patrick H. NeMoyer, J.
Plaintiff commenced this action in March 2012 against *422 defendants Amy Remmele (hereinafter Remmele or defendant, in the singular) and Peak of Success, LLC, the limited liability corporation of which Remmele is the sole member and by which she does business. The complaint states discrete causes of action for breach of contract, breach of fiduciary duty, negligence, and fraud or misrepresentation (or, more accurately, fraudulent omission of a material fact). The gravamen of each cause of action is that Remmele held herself out to the public and to plaintiff and plaintiffs then wife as a “marital counselor”; that plaintiff and his then wife engaged defendant to provide “marriage counseling” to the couple in an attempt to “reconcile” their “differences”; that as part of such counseling, plaintiff disclosed to defendant intimate details with respect to his “marriage and his relationship”; that plaintiff paid defendant for such counseling; but that plaintiff eventually learned that defendant had a sexual relationship or extramarital affair with plaintiff’s wife, leading to the commencement of divorce proceedings between plaintiff and his wife. Thus, the first cause of action alleges that defendant breached her contract with plaintiff with regard to the provision of marriage counseling services. The second cause of action alleges that defendant entered into a professional relationship with plaintiff of the highest trust, integrity, and discretion but that defendant breached that trust, and indeed exploited plaintiffs confidences with regard to his marriage. The third cause of action alleges that defendant held herself out as possessing the degree of learning and skill necessary to function as a marriage counselor but that defendant provided negligent and careless counseling. The fourth cause of action alleges that defendant engaged in misrepresentation and fraud by concealing from plaintiff the fact of the extramarital affair while counseling plaintiff and his wife. The complaint alleges that the aforementioned wrongs of defendant caused plaintiff to sustain compensatory damages of $300,000, including for emotional distress; the complaint further seeks unspecified punitive damages.
Now before the court is a pre-answer motion by defendants to dismiss the complaint for failure to state a cause of action and based upon a defense or defenses founded upon documentary evidence (see CPLR 3211 [a] [1], [7]). Defendants argue that the complaint is entirely subject to dismissal because all of its allegations amount to an improper attempt to circumvent Civil Rights Law § 80-a, commonly known as the Heart Balm Statute, which proscribes causes of action for, inter alia, alienation of affections, criminal conversation, and seduction. Defendants *423 further argue the existence of specific defects in or legal problems with plaintiffs various causes of action and with his demand for punitive damages. In attacking those claims, defendants submit the affidavit of Remmele, who describes her business as providing consulting services to individuals and businesses in order to help advance communications skills, increase productivity, and improve team building. Defendant thus avers that she is a “business coach” and is not now and never has been a “marriage counselor.” Defendant specifically denies contracting to provide marriage counseling services to plaintiff, but instead avers that she entered into but two separate contractual arrangements with his business, Alden Pools, Inc.[1] The first, according to defendant, was entered into around November 30, 2010, and called for defendants to run a daylong communication training retreat and conduct assessments and follow-up sessions for employees of plaintiffs business, including plaintiff and his then wife, in exchange for $2,100. The other, according to defendant, was entered into with the pool company around January 20, 2011, and called for defendants to arrange for one strategic planning meeting and some follow-up visits and to provide related materials to plaintiffs business in exchange for barter compensation consisting of the installation of a pool and trampoline at defendant’s house. The documentary evidence relied upon by defendants includes an exchange of emails evidencing the first arrangement and a single-page, formal agreement embodying the second.
The motion is opposed by plaintiff, who denies that “business coaching” was the only service rendered by defendants and who specifically avers that, beginning in the fall of 2009 and continuing periodically through the winter of 2010-2011, defendant provided “marital” or “couples counseling” to plaintiff and his then wife. Plaintiff submits some documentary evidence of his own, including an email dated January 18, 2011 in which plaintiff seemed to complain to defendant about the inappropriate or ill-advised “blending” of the “personal and business” “dynamics” of defendant’s involvement with plaintiff, his then wife, and the business. The second document, ostensibly prepared by defendant, summarizes a meeting of January 28, 2011. That document (including its second and third pages furnished *424 by defendants in reply) tends to show that defendant’s coaching or counseling of the couple at that meeting focused on the couple’s marriage or personal relationship as well as on their business dealings with one another. The third document is an advertisement of a certain October 2011 seminar in terms tending to show that defendant involves herself in counseling “couples” in their “relation-SHIP” (be it “the Love Boat” or “the Titanic”) with one another.
Plaintiff further avers that his then wife advised him, by means of her lawyer’s letter of March 17, 2011, that she wanted a divorce from him, a divorce eventually granted in July 2012. Plaintiff further avers that, along the line, he was told by his wife that she had been engaged in a sexual relationship with defendant “since at least January 28, 2011.”
In reply, defendant avers that the January 28, 2011 meeting among her, plaintiff, and his then wife “concerned plaintiffs business and in no way constituted marriage counseling.” Remmele further avers, “To the extent that plaintiffs relationship came up, it was in the context of communication issues between husband and wife business partners.” In support of that assertion, defendants put in the second and third pages of the January 28, 2011 document.
Upon its consideration of the parties’ respective submissions, the court notes that on a motion to dismiss for failure to state a cause of action, the court must accept the allegations of the complaint as true and accord the plaintiff the benefit of every possible favorable inference (see Leon v Martinez, 84 NY2d 83, 87 [1994]). The court then must determine whether the facts as alleged by the plaintiff fit within any theory cognizable at law (see Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 570-571 [2005]; Leon, 84 NY2d at 87-88; Morone v Morone, 50 NY2d 481, 484 [1980]). In opposing such a motion, the plaintiff may rest upon the allegations made in the complaint, in which case the issue for the court is whether, within its four corners, the complaint sets forth the elements of a viable cause of action. Alternatively, the plaintiff may submit affidavits and other materials to remedy defects in the complaint and preserve unartfully pleaded but potentially meritorious claims (see Arrington v New York Times Co., 55 NY2d 433, 442 [1982], rearg denied and dismissed 57 NY2d 669, 674 [1982], cert denied 459 US 1146 [1983]; Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976]). In that case, the plaintiffs additional submissions are likewise to “be given their most favorable intendment” (see *425 Arrington, 55 NY2d at 442; see also Pharmhealth Infusion v Rohm Servs. Corp., 249 AD2d 950 [4th Dept 1998]), and the court is to focus on whether the pleader has a cause of action rather than on merely whether he has properly stated one (see Leon, 84 NY2d at 88; Rovello, 40 NY2d at 636). In that analysis, “unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissed should not eventuate” (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
On the other hand, the complaint should be dismissed where documentary evidence authoritatively contradicts some critical allegation of the complaint or resolves all factual issues in the case, thereby conclusively disposing of the claim (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Enzinna v D’Youville Coll., 84 AD3d 1744, 1745 [4th Dept 2011]; Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65, 69 [1st Dept 2003], Iv dismissed 2 NY3d 794 [2004]; Gorilla Realty v SLK Westbury, 288 AD2d 344 [2001], Iv denied 97 NY2d 612 [2002]).
Applying the foregoing legal criteria, the court concludes that neither the complaint as a whole, nor the individual causes of action asserted therein, necessarily or wholly run afoul of the Heart Balm Statute and thereby fail to state cognizable causes of action. Plaintiff has not asserted a statutorily precluded cause of action for alienation of affections, seduction, or criminal conversation. Instead, plaintiff states cognizable causes of action for breach of contract, breach of fiduciary duty, negligence or professional malpractice, and fraudulent concealment of a material fact. Plaintiff appropriately premises those claims on the alleged existence of a marital or couples counseling relationship/arrangement between defendant or defendants, on the one hand, and plaintiff and his then wife on the other. This court recognizes that the alleged contractual and fiduciary breach, as well as the alleged act of negligence and the material fact allegedly fraudulently concealed, consists of or inheres in Remmele’s alleged betrayal of plaintiff and the counseling relationship in the form of Remmele’s alleged sexual involvement or affair with plaintiffs wife during the course of the alleged marital counseling. However, the court cannot regard plaintiffs inclusion of that critical allegation in the complaint as tantamount to an improper attempt to assert any of the antiquated and outlawed causes of action. To put it another way, the allega *426 tion that defendant breached the contractual or fiduciary duty or relationship of trust, or acted carelessly or unskillfully, in rendering marital counseling to the couple, particularly by engaging in an improper sexual relationship with plaintiffs then wife, thereby actively destroying the marriage, does not render the pleaded causes of action incognizable or non-actionable as a matter of law. The fact remains that, to the extent that there was a contract between the parties for defendant to render marital counseling to plaintiff and his wife, and to the extent that a fiduciary relationship of loyalty and trust was thereby created between defendant and plaintiff, defendant was bound to fulfill her contractual obligations and fiduciary duties, was bound to act carefully and prudently, and further was duty-bound not to conceal material facts from plaintiff. Thus, to this court, it ought not to matter that the alleged reason why, or the alleged respect in which, defendant committed the alleged breach or breaches in question was that she was allegedly sleeping with plaintiffs wife (see generally Gasper v Lighthouse, Inc., 73 Md App 367, 372, 533 A2d 1358, 1360 [1987], cert denied 311 Md 718, 537 A2d 272 [1988] [held: “abolition of the actions for alienation of affections and criminal conversation does not preclude a person from maintaining a traditional breach of contract action or a recognized tort action merely because the breach arose from an improper liaison with the plaintiffs spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage”]; see also Dupree v Giugliano, 23 Misc 3d 1110[A], 2009 NY Slip Op 50697[U] [Sup Ct, Suffolk County 2009], affd 87 AD3d 975 [2d Dept 2011] [suit for malpractice against doctor who had sexual relationship with patient not precluded by Heart Balm Statute]; Roy v Hartogs, 81 Misc 2d 350, 352-354 [Civ Ct, NY County 1975] [same]; cf. Coopersmith v Gold, 172 AD2d 982 [3d Dept 1991]).
With that said, the court nonetheless makes clear that the Heart Balm Statute, which is to be “liberally construed to effectuate its objects and purposes” (Civil Rights Law § 84), stands as a prohibition against plaintiffs recovery of certain types or species of damages from defendants. Under the law, plaintiff is forbidden to recover damages for the occurrence of sexual activity or a romantic affair between Remmele and his wife, for the consequent damage to or destruction of his marriage, or for the emotional distress or mental anguish associated with any of the foregoing (see Guiles v Simser, 9 Misc 3d 1083, *427 1088 [Sup Ct, Broome County 2005], affd 35 AD3d 1054 [3d Dept 2006]). Moreover, insofar as plaintiff seeks to recover such damages, his causes of action for breach of fiduciary duty and negligence or malpractice are merely disguised but nonetheless improper attempts to circumvent the Heart Balm Statute (see Marmelstein v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue, 11 NY3d 15, 20 [2008]; Licata v Kelley, 217 AD2d 973, 974 [1995]). (As a matter of law, plaintiffs claims of breach of contract and fraud would not permit recovery of noneconomic damages of any sort, certainly including those damages intended to compensate plaintiff for emotional distress from learning of the sexual affair or enduring the break-up of the marriage [see Wehringer v Standard Sec. Life Ins. Co. of N.Y., 57 NY2d 757, 759 (1982); Campbell v Silver Huntington Enters., 288 AD2d 416 (2d Dept 2001); Dana v Oak Park Marina, 230 AD2d 204, 212 (4th Dept 1997); see also O’Neill v O’Neill, 264 AD2d 766, 767 (2d Dept 1999), Iv dismissed 94 NY2d 858 (1999); Helbig v City of New York, 212 AD2d 506, 508 (2d Dept 1995); Rivera v Wyckoff Hgts. Hosp., 184 AD2d 558, 561 (2d Dept 1992)].)
On the other hand, and as indicated, supra, Civil Rights Law § 80-a does not stand as a categorical bar to any and all claims arising out of an alleged professional counselor’s alleged improper sexual involvement with a client. Thus, in Marmelstein (11 NY3d 15), a case rejecting a cause of action for breach of fiduciary duty against a cleric premised on the cleric’s alleged sexual affair with the congregant plaintiff — a rejection based in part upon First Amendment considerations, the lack of any true fiduciary relationship, and the effect of Civil Rights Law § 80-a — the Court of Appeals took pains to refrain from suggesting “that a cleric who is also a licensed professional, such as a psychiatrist, psychologist or attorney, could not assume fiduciary obligations under existing laws and the secular standards that govern the practice of those professions” (id. at 22 n 3). Again, this court would note that the fact that defendant allegedly breached the contract and the fiduciary duty or other relationship of trust by allegedly having sex with plaintiff’s wife does not mean that defendant committed no actionable breach.
The court has no intention here to delineate all of the categories or species of damages that might be recovered by plaintiff upon proof of a breach of a contractual or tort duty allegedly assumed by defendants. The court would note, however, that it probably would countenance an effort by plaintiff to recover his
*428 alleged economic or “out-of-pocket” damages in the form of the loss of the benefit of his bargain with defendants. In other words, this court would have no problem with plaintiffs recouping any money he had paid[2] to defendants specifically for marital counseling if, as alleged, Remmele did not in fact use her best efforts to help the marriage but instead subverted it by embarking on a sexual relationship with plaintiffs wife. Quite simply, the idea that a self-professed counselor could accept and keep a fee earmarked for marriage or relationship counseling despite entering into a secret sexual relationship with one of the counseled parties is beyond this court’s acceptance.
Addressing defendants’ challenges to the individual causes of action, the court concludes that plaintiff has sufficiently alleged the existence of a contract whereby defendants would provide marital counseling to plaintiff and his then wife, and that plaintiff further has sufficiently alleged a breach of that contract and resultant damages. Plaintiff alleges that beginning in 2009 and continuing into 2011, plaintiff engaged the paid services of defendants for the purposes of providing marriage counseling. Although defendants have denied that, they have not done so conclusively, their documentary evidence notwithstanding. Although the email exchange of November 2010 and the more formal written contract of January 2011 certainly tend to show that defendant was engaged as a “business coach,” neither the exchanged emails nor the terse written contract on its face refutes the allegation that defendant was already engaged in providing marriage counseling to the couple. Indeed, this court notes that the November 29, 2010 email from defendant to plaintiffs wife — which email defendant herself describes as having formed the first consultation contract — afforded the couple an $800 “[cjourtesy, current client discount” from defendants’ “[r]egular [c]ost.” That contractual term at least arguably buttresses plaintiffs assertion that there was a preexistent counseling relationship and undermines defendant’s contrary assertion. Similarly, and again, the January 28, 2011 meeting summary, which is relied upon by both parties, tends to show that defendant counseled the couple with regard to their personal or marital relationship as well as their relationship at work.
By the same token, and for similar reasons, the court concludes that plaintiff has adequately pleaded the essential ele *429 ments of causes of action for breach of fiduciary duty, professional negligence or malpractice, and fraudulent concealment. These causes of action present a somewhat closer question for the court, however, given defendant’s apparent lack of state licensing or other recognized professional credentials or certification as a psychologist, social worker, therapist, or the like. Nevertheless," it appears to the court that defendant may have held herself out to the public as someone qualified to counsel individuals or couples in their relationships, including their marriages, and that indeed is plaintiff’s explicit allegation. Thus, the court concludes, plaintiff has sufficiently alleged the existence of a fiduciary duty[3] and other relationship of trust between himself and defendant, defendant’s breach thereof, defendant’s exploitation of intimate information, and defendant’s concealment of the arguably material fact that, while purporting to counsel the couple in their marriage, defendant was having a sexual affair with plaintiff’s wife.[4] Further, plaintiff has sufficiently alleged that defendant provided negligent and careless counseling to plaintiff and did not possess the ordinary skill, knowledge, or ability of those holding themselves out to the public as marriage counselors.
Concerning plaintiffs demand for punitive damages, the fact is that punitive damages might well be recoverable upon proof of defendants’ commission of fraud and possibly their breach of fiduciary duty and negligence as well (see Dupree, 87 AD3d at 978 [upholding punitive damages award against physician who *430 assumed role as plaintiff’s mental health therapist but who had sexual affair with her]). Any such award would be aimed at punishing the wrongdoer and deterring similar conduct by others (see Laurie Marie M. v Jeffrey T.M., 159 AD2d 52, 59 [2d Dept 1990], affd 77 NY2d 981 [1991]; Peters v Newman, 115 AD2d 816, 817 [3d Dept 1985], appeal dismissed 67 NY2d 916 [1986]; see also Le Mistral, Inc. v Columbia Broadcasting Sys., 61 AD2d 491, 494 [1st Dept 1978] [citing 14 NY Jur, Damages, §§ 176 and 180 for proposition that “exemplary damages are (generally) recoverable in all actions ex delicto based upon tortious acts which involve ingredients of malice, fraud, oppression, insult, wanton or reckless disregard of the plaintiffs rights, or other circumstances of aggravation, as a punishment of the defendant and admonition to others”], appeal dismissed 46 NY2d 940 [1979]; see generally Walker v Sheldon, 10 NY2d 401, 404-405 [1961]). Thus, punitive damages may be awarded where the wrong complained of is “actuated by evil and reprehensible motives” (Walker, 10 NY2d at 404), is “intentional and deliberate, and has the character of outrage frequently associated with crime” (Prozeralik v Capital Cities Communications, 82 NY2d 466, 479 [1993] [internal quotation marks omitted], quoting Prosser & Keeton, Torts § 2 at 9 [5th ed 1984]). However, such punitive damages may be awarded only in proportion to any actual injury inflicted by the defendant (see generally Correia v Suarez, 52 AD3d 641 [2d Dept 2008]).
Here, in the absence of an order dismissing the tort causes of action, there is no basis for ruling out any claim for punitive damages that might be premised thereon, certainly not at the threshold. Plaintiff is entitled to explore through discovery defendant’s alleged conduct, both with respect to this couple and in general.
Accordingly, the motion of defendants to dismiss the complaint is denied, although it is determined as a matter of law that plaintiff may not recover damages, including for emotional distress, on account of the sexual relationship between defendant and plaintiffs then wife or the consequent damage to or destruction of the marriage.

. Inasmuch as the two contracts highlighted by defendants are not the alleged contract upon which plaintiff is suing, it is quite beside the point for defendants to argue that plaintiff personally lacks standing to enforce those defense-highlighted contracts.

. In the posture of this ease, the court must accept as true plaintiffs allegation of such payment even though, as pointed out by defendants, plaintiff has adduced no proof of payment.

. Plaintiff no doubt will be under a heavy burden in this case to ultimately demonstrate the existence of facts giving rise to a fiduciary relationship between himself and Remmele (see Marmelstein, 11 NY3d at 22-23; see also Roni LLC v Arfa, 18 NY3d 846, 848 [2011] [held: a “fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation” (internal quotation marks omitted)]; EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005] [held: a fiduciary relationship is “necessarily fact-specific” and is “grounded in a higher level of trust than normally present in the marketplace between those involved in arm’s length business transactions”]). Nonetheless, inasmuch as this action is not yet even through the pleading stage, this court will for the time being decline defendants’ invitation to determine as a matter of law that any fiduciary relationship was lacking or necessarily ended before the extramarital affair (at least to plaintiffs knowledge) began.

. The court is not inclined to hold that this allegation fails to meet the specificity requirement of CPLR 3016 (b). Moreover, in the absence of proof establishing when the alleged payments were made to defendants, the court is not in a position to hold that there was no detrimental reliance by plaintiff as a matter of law.