*131
 
 OPINION OF THE COURT
 

 Graffeo, J.
 

 In this appeal, we must decide whether CPLR 4505 imposes a fiduciary duty of confidentiality upon members of the clergy that subjects them to civil liability for the disclosure of confidential communications. We hold that it does not.
 

 After 15 years of marriage, plaintiff Chani Lightman initiated a divorce proceeding against her husband, Hylton Light-man, in February 1996. She also sought an order granting her temporary custody of the parties’ four children. In opposition to plaintiffs application, her husband submitted, under seal, affirmations from two rabbis, apparently intending to show that his wife was jeopardizing the Orthodox Jewish upbringing of the children by not following religious law. Rabbi Tzvi Flaum, who was associated with the synagogue where the Lightmans were congregants, stated that plaintiff had advised him that she had stopped engaging in “religious purification laws” and was “seeing a man in a social setting.” Similarly, Rabbi David Weinberger, an acquaintance of the Lightmans, in his affirmation indicated that plaintiff had acknowledged to him that “she freely stopped her religious bathing so [that] she did not have to engage in any sexual relations” with her husband, and he opined that plaintiff no longer wanted “to adhere to Jewish law despite the fact that she is an Orthodox Jew and her children are being raised Orthodox as well.”
 

 As a result of the rabbis’ disclosures of those conversations, plaintiff commenced this action against them, asserting causes of action for breach of fiduciary duty in violation of the CPLR 4505 “clergy-penitent privilege” and intentional infliction of emotional distress against both rabbis and defamation against Rabbi Weinberger. Prior to answering, defendants moved to dismiss the complaint, contending that a violation of the statutory evidentiary privilege did not give rise to a private right of
 
 *132
 
 action, plaintiffs allegations were insufficient to support a cause of action for intentional infliction of emotional distress and the statements of Rabbi Weinberger were protected speech in the nature of an opinion. Plaintiff opposed the motion and defendants countered that dismissal of the breach of fiduciary duty claims was compelled by the First Amendment of the United States Constitution because the disclosures were required under Jewish law.
 

 Supreme Court converted the motion into one for summary judgment and directed the parties to provide further evidence relevant to that determination. Rabbi Flaum submitted two additional affirmations in which he expanded on the nature of his discussions with the Lightmans. He claimed that more than two years earlier Hylton Lightman first revealed marital problems to him. That conversation prompted plaintiffs mother to request that he speak with plaintiff. At the meeting, plaintiff and her mother berated him for discussing the marriage with plaintiffs husband and for giving advice without obtaining plaintiffs version of the situation. He alleged that plaintiff admitted to discontinuing her religious purification rituals and indicated she was socializing with men other than her husband. Rabbi Flaum further contended that these statements were not confidential because plaintiff never requested spiritual guidance and that, pursuant to Jewish law, he was obliged to relay this information to plaintiffs husband in order to prevent him from engaging in conjugal relations with his wife in violation of the Torah, as well as to shield the couple’s children from exposure to plaintiffs improper conduct.
 

 Rabbi Weinberger echoed this doctrinal explanation for the disclosures and alleged that he had met jointly, and separately, with the Lightmans. He claimed plaintiff was accompanied by a friend at these meetings on more than one occasion. Expressing surprise that plaintiff would have admitted her failure to follow religious laws of family purity while in the presence of a friend, Weinberger indicated that these revelations led him to believe the discussions were not confidential. Plaintiff disputed defendants’ interpretation of religious law, and characterized her interactions with defendants as spiritual counseling received with the expectation that intimate information would remain confidential.
 

 Supreme Court granted partial summary judgment by dismissing plaintiffs defamation claim but ruled that the causes of action for intentional infliction of emotional distress and breach of fiduciary duty were viable. As to the latter, the
 
 *133
 
 court concluded that there were issues of fact regarding whether the communications remained confidential despite the presence of third parties during the various conversations and whether the communications were made to defendants in their spiritual capacity. Supreme Court further found that a violation of CPLR 4505 was actionable as a breach of fiduciary duty of confidentiality and that there were no First Amendment implications under the facts presented.
 

 The Appellate Division modified by dismissing the fiduciary duty and emotional distress causes of action. The Court determined that plaintiff failed to demonstrate that she had not waived the clergy-penitent privilege due to the presence of third parties during her meetings with each of the defendants. Accordingly, the Court declined to address whether plaintiff stated a claim for breach of fiduciary duty.
 

 Two Justices dissented, in part, and would have sustained the causes of action for breach of fiduciary duty, leaving as an issue of fact whether plaintiff waived the clergy-penitent privilege. Finding the fiduciary duty claims actionable, the dissent reasoned that a cause of action for breach of fiduciary duty of confidentiality stems from a breach of CPLR 4505 because claims arising from violations of analogous statutory provisions had been recognized and defendants had not adequately shown they were entitled to First Amendment protection. Plaintiff appealed to this Court as a matter of right, and we now affirm for reasons different from those stated by the Appellate Division.
 

 The common law insulated certain confidential information from disclosure at trial, such as interspousal communications made during the course of a marriage
 
 (see,
 
 1 McCormick, Evidence § 78, at 323-324 [5th ed 1999]). Eventually, special categories of confidential communications were deemed by statute to be entitled to a privilege against disclosure
 
 (see,
 
 Prince, Richardson on Evidence § 5-101, at 225 [Farrell 11th ed 1995]). CPLR article 45 codifies rules of evidence that restrict the admissibility of information obtained in specified confidential contexts, such as that which exists between spouses (CPLR 4502), attorney and client (CPLR 4503), physician and patient (CPLR 4504), psychologist and client (CPLR 4507) and social worker and client (CPLR 4508). In general, these statutes protect special relationships akin to fiduciary bonds, which operate and flourish “in an atmosphere of transcendent trust and confidence”
 
 (Aufrichtig v Lowell,
 
 85 NY2d 540, 546).
 

 
 *134
 
 The clergy-penitent privilege was unknown at common law (see,
 
 Matter of Keenan v Gigante,
 
 47 NY2d 160, 166,
 
 cert denied sub nom. Gigante v Lankier,
 
 444 US 887).
 
 *
 
 It arose from the Roman Catholic sacrament of Penance, which requires sins to be disclosed to a priest who is prohibited by ecclesiastical law from revealing the substance of those disclosures even when the refusal to disclose results in imprisonment for contempt
 
 (see,
 
 Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4505, at 683). Enacted to respond “to the urgent need of people to confide in, without fear of reprisal, those entrusted with the pressing task of offering spiritual guidance so that harmony with one’s self and others can be realized”
 
 (Matter of Keenan v Gigante,
 
 47 NY2d at 166), the privilege originally applied only to communications with members of the clergy who were enjoined from disclosing the substance of such communications under the rules or practices of their religion
 
 (see,
 
 former Civil Practice Act § 351).
 

 Recognizing the value of extending the privilege to other religions
 
 (see,
 
 Second Prelim Rep of Advisory Comm on Prac & Pro, 1958 NY Legis Doc No. 13, at 93), the Legislature adopted CPLR 4505, which applies to confidential communications made by congregants to clerics of all religions
 
 (see, People v Carmona,
 
 82 NY2d at 608-609). CPLR 4505 provides that unless “the person confessing or confiding waives the privilege, a clergyman, or other minister of any religion or duly accredited Christian Science practitioner, shall not be allowed [to] disclose a confession or confidence made to him in his professional character as spiritual advisor.” A communication is not privileged merely because it is made to a cleric
 
 (see, Matter of Keenan v Gigante,
 
 47 NY2d at 166). Rather, the statute’s protection envelops only information imparted “in confidence and for the purpose of obtaining spiritual guidance”
 
 (People v Carmona,
 
 82 NY2d at 609).
 

 Here, plaintiff acknowledges that she cannot prevail without proving the existence of a fiduciary relationship with each defendant and the requisite expectation of confidentiality, but
 
 *135
 
 argues that she automatically satisfies both elements because the information protected by CPLR 4505 is confidential as a matter of law. Defendants, on the other hand, reject the notion that a rule of evidence can establish an actionable fiduciary duty of confidentiality. They contend that clerics cannot be compared to the secular professionals enumerated in article 45 because those practitioners derive their professional authority from the issuance of licenses. Defendants emphasize that these professionals must conduct themselves in accordance with the rules that regulate their interactions with clients or patients and are subject to disciplinary measures for professional misconduct. Finally, defendants claim that utilizing CPLR 4505 as the fiduciary standard would raise significant constitutional concerns because it would require courts to interpret religious principles and chill defendants’ exercise of Jewish beliefs.
 

 We find a distinction between confidential information under the rules and regulations that govern secular professionals and information cloaked by an evidentiary privilege under the CPLR. This difference demonstrates that statutory privileges are not themselves the sources of fiduciary duties but are merely reflections of the public policy of this State to proscribe the introduction into evidence of certain confidential information absent the permission of or waiver by a declarant. For example, in the attorney-client context, CPLR 4503 applies only to “confidential communication [s] made between the attorney or his employee and the client.” The Code of Professional Responsibility, however, prohibits the disclosure not only of “confidences,” defined as “information protected by the attorney-client privilege,” but also of “secrets,” described as “other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client” (Code of Professional Responsibility DR 4-101 [a], [b] [22 NYCRR 1200.19 (a), (b)]). Thus, an attorney’s duty of confidentiality is substantially broader than that reflected in CPLR 4503.
 

 In fact, we have previously explained that a significant purpose of the Code of Professional Responsibility is to ensure “that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality owed by attorneys to their clients”
 
 (Kassis v Teacher’s Ins. & Annuity Assn.,
 
 93 NY2d 611, 616) as well as the “duty to deal fairly, honestly and with undivided loyalty”
 
 (Matter of Cooperman,
 
 83 NY2d 465, 472;
 
 see also, Matter of Russakoff,
 
 79 NY2d 520, 524 and
 
 Greene v Greene,
 
 47 NY2d 447, 451).
 

 
 *136
 
 A similar dichotomy between professional confidentiality obligations and evidentiary rules designed to preserve confidentiality exists for physicians and other health care professionals. CPLR 4504 prevents the disclosure of information “acquired in attending a patient in a professional capacity, and which was necessary to enable [the physician or other health care professional] to act in that capacity.” Nevertheless, information obtained in a professional capacity but not necessary to enable the physician to fulfill his or her medical role is a protected confidence, the disclosure of which constitutes professional misconduct in the absence of patient consent or legal authorization (see, Education Law § 6530 [23];
 
 see also,
 
 8 NYCRR 29.1 [b] [8]). Thus, although the statutory privileges may in some instances overlap with the applicable fiduciary duties of confidentiality which have been defined elsewhere in the law, those evidentiary rules are not the sources of the underlying duties, and article 45 does not establish the parameters of those fiduciary relationships.
 

 The clergy and the other classes of professionals specified in CPLR article 45 are also fundamentally different with respect to the extent of State regulation of their professional practices. Individuals employed in other fields subject to statutory privileges derive their authority to practice from the State, which conditions the issuance of a license on, among other requirements, the completion of formalized education and/or training
 
 (see,
 
 Education Law § 6524 [2]; § 6554 [2]; § 6604 [2]; § 6905 [2]; § 7004 [2]; § 7603 [2]; § 7704 [2]; 22 NYCRR 520.3, 520.4). Statutes and regulations specifically prohibit the disclosure of confidences and invoke the possibility of sanctions for professional misconduct
 
 (see, e.g.,
 
 Education Law § 6530 [23],
 
 supra;
 
 8 NYCRR 29.1 [b] [8],
 
 supra;
 
 Code of Professional Responsibility DR 1-102 [a] [1] [22 NYCRR 1200.3 (a) (1)]; Code of Professional Responsibility DR 4-101 [a], [b] [22 NYCRR 1200.19 (a), (b)]). In contrast, clerics are free to engage in religious activities without the State’s permission, they are not subject to State-dictated educational prerequisites and, significantly, no comprehensive statutory scheme regulates the clergy-congregant spiritual counseling relationship. This explains plaintiff’s inability to identify a source of defendants’ alleged duty of confidentiality independent of CPLR 4505.
 

 Defendants and the
 
 amici
 
 strenuously argue that the imposition of liability without regard to a cleric’s religious principles which motivate or compel disclosure would violate the Free Exercise and Establishment Clauses of the First
 
 *137
 
 Amendment of the United States Constitution. Despite the inconsistencies in defendants’ rationale for revealing plaintiffs communications (as aptly noted by the dissent in the Appellate Division), the prospect of conducting a trial to determine whether a cleric’s disclosure is in accord with religious tenets has troubling constitutional implications. To permit a party to introduce evidence or offer experts to dispute an interpretation or application of religious requirements would place fact-finders in the inappropriate role of deciding whether religious law has been violated.
 

 The United States Constitution protects the right of individuals to “believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs * * * [I]f those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain”
 
 (United States v Ballard,
 
 322 US 78, 86-87). As we explained in a different context, “civil courts are forbidden from interfering in or determining religious disputes. Such rulings violate the First Amendment because they simultaneously establish one religious belief as correct * * * while interfering with the free exercise of the opposing faction’s beliefs”
 
 (First Presbyt. Church v United Presbyt. Church,
 
 62 NY2d 110, 116,
 
 cert denied
 
 469 US 1037;
 
 see also, Park Slope Jewish Ctr. v Congregation B’Nai Jacob,
 
 90 NY2d 517, 521;
 
 Avitzur v Avitzur,
 
 58 NY2d 108, 114,
 
 cert denied
 
 464 US 817).
 

 Guided by these well-settled principles and in the absence of a statute, regulation or other source delineating the scope and nature of the alleged fiduciary duty, we view the CPLR 4505 privilege in the manner intended by the Legislature — as a rule of evidence and not as the basis of a private cause of action. Although plaintiff understandably resents the disclosure of intimate information she claims she revealed to defendants in their role as spiritual counselors, we hold that, as a matter of law, CPLR 4505 — directed at the admissibility of evidence— does not give rise to a cause of action for breach of a fiduciary duty involving the disclosure of oral communications between a congregant and a cleric. Remittal for factual determinations is thus unnecessary and defendants are entitled to summary judgment dismissing the first and second causes of action.
 

 In light of this conclusion, we need not address plaintiff’s remaining contentions, including whether there was an issue of fact concerning her purported waiver of the privilege.
 

 
 *138
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.
 

 *
 

 The privilege has been alternatively referred to as the “priest-penitent” privilege
 
 (Matter of Keenan v Gigante, supra,
 
 at 166), “clergy-penitent” privilege (Alexander, 1994 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4505, 2001 Cum Pocket Part, at 137), “minister-penitent” privilege (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY,. Book 7B, CPLR 4505, at 683), “cleric-congregant” privilege
 
 (People v Carmona,
 
 82 NY2d 603, 609) and “clergy-communicant” privilege (Morvillo & Anello,
 
 The Clergy Communicant Privilege,
 
 NYLJ, Oct. 2, 2001, at 3, col 1).