[747 NYS2d 102]

Chaim Sieger, Respondent, v Helen Sieger, Defendant. Michael Tenenbaum, Proposed Intervenor-Appellant.

Second Department, September 9, 2002

## APPEARANCES OF COUNSEL

*Mintz & Gold, LLP,* New York City (*Steven G. Mintz* and *Lisabeth Harrison* of counsel), for proposed intervenor-appellant.

*Mallow, Konstam & Hager, P.C.,* New York City (*Abe H. Konstam* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMANN, J.

In the instant action for a divorce and ancillary relief, the issue raised on appeal is whether the Supreme Court properly denied those branches of the motion of Michael Tenenbaum, the father of the defendant Helen Sieger, for leave to intervene and to compel arbitration of certain claims by a rabbinical court. We conclude that the Supreme Court properly denied those branches of the appellant's motion, and therefore affirm the order insofar as appealed from.

The plaintiff Chaim Sieger (hereinafter the husband) and the defendant Helen Sieger (hereinafter the wife) are Orthodox Jews who were married in 1972. In March 1998, the husband commenced the instant action for a divorce and ancillary relief. Insofar as is relevant to the instant appeal, in his amended statement of net worth, the husband reported ownership interest in two nursing homes, and he sought equitable distribution of such interest.

By order to show cause dated June 30, 2000, the appellant moved, inter alia, for leave to intervene in the instant action and to compel the husband to submit to arbitration by a rabbinical court on his claims of ownership in the two nursing homes. In his affirmation in support of the motion, the appellant asserted that as a "highly observant orthodox Jew," he is required, under Jewish law, to resolve any disputes with other Orthodox Jews before a rabbinical court. He further claimed that the husband's interest in the nursing homes "derived and related directly to his status as [the appellant's] daughter's husband."

The appellant based his claim upon an engagement contract which he entered into with the husband's father in September 1971, and which the husband and wife also signed. The contract, inter alia, required the husband's father "to clothe [the husband]" and "to give gifts to the bride in keeping with his dignity," and required the appellant "to clothe" the wife. It further provided that any disputes would be settled "in accordance with the 'regulations of Speyer, Worms, and Mainz.' " According to the appellant, this provision of the engagement contract required that "any disputes concerning [property provided by the wife's family] are * * * to be resolved in" a rabbinical court known as a Beth Din, and that he had standing to intervene and compel arbitration of his claim before the rabbinical court because he "was expressly named as a party to the engagement contract."*

After the husband submitted opposition papers in which he asserted, inter alia, that the engagement contract did not contain an arbitration clause and was superseded by the parties' marriage contract, the appellant submitted evidence indicating that the regulations of Speyer, Worms, and Mainz arose out of 13th century synods "at which many diverse enactments were adopted in every area of Jewish law." He further submitted the affidavit of Rabbi Aryeh Rabinowitz, a rabbinical judge and expert in Rabbinical and Talmudic law. In relevant part, Rabinowitz stated: (1) the engagement contract was not superseded by the marriage contract, and (2) "[t]he engagement contract does in fact contain an arbitration clause" because "[t]he regulations of Speyer, Worms and Mainz provide that all disputes shall be submitted to a Beth Din for resolution." Moreover, according to Rabbi Rabinowitz, Jewish law does not require a specific arbitration agreement for a Beth Din to obtain jurisdiction over the parties.

Upon a timely motion, a person is permitted to intervene in an action as of right when, inter alia, "the action involves the disposition or distribution of, or the title * * * to, property and the person may be affected adversely by the judgment" (CPLR 1012 [a] [3]). The court, in its discretion, may permit a person to intervene, inter alia, "when the person's claim or defense and the main action have a common question of law or fact"

---

* The appellant also referred to a marriage contract between the husband and wife. However, he failed to submit a copy of the marriage contract in support of his motion. Therefore, we will not discuss the alleged terms of that contract.

(CPLR 1013). "However, it has been held under liberal rules of construction that whether intervention is sought as a matter of right under CPLR 1012 (a), or as a matter of discretion under CPLR 1013 is of little practical significance," and that "intervention should be permitted where the intervenor has a real and substantial interest in the outcome of the proceedings" (*Perl v Aspromonte Realty Corp.,* 143 AD2d 824, 825; *see Wapnick v Wapnick,* 295 AD2d 422; *Romonoff Rest. & Cabaret v World Wide Asset Mgt. Corp.,* 273 AD2d 292, 293; *Cross Sound Ferry Servs. v Town of Southold,* 263 AD2d 524).

Contrary to the appellant's contention on appeal, the Supreme Court properly denied his application for leave to intervene in the instant case. The appellant failed to demonstrate that he has a "real and substantial interest in" the disputed nursing homes owned or partially owned by the husband (*see Vacco v Herrera,* 247 AD2d 608; *Osman v Sternberg,* 168 AD2d 490). He failed to submit any evidence to support his claim that he had an ownership interest in those nursing homes. By contrast, the husband submitted evidence which established that the appellant does not have an ownership interest in the nursing homes.

Even assuming that the appellant demonstrated an ownership interest in the nursing homes, the court could not grant that branch of his motion which was to compel arbitration of his claim before a rabbinical court. To do so under the circumstances of this case would violate the First Amendment because the engagement contract does not contain a provision that expressly provides for the resolution of disputes before a Beth Din, which would allow the court to decide the issue on neutral principles of contract law, without reference to any religious principles (*cf. Avitzur v Avitzur,* 58 NY2d 108, *cert denied* 464 US 817; *Park Slope Jewish Ctr. v Congregation B'nai Jacob,* 90 NY2d 517, 522). Rather, the appellant based his claim upon the interpretation of the ambiguous phrase that the parties would resolve any disputes "in accordance with the 'regulations of Speyer, Worms, and Mainz.'" Consistent with First Amendment principles, "civil courts are forbidden from interfering in or determining religious disputes. Such rulings violate the First Amendment because they simultaneously establish one religious belief as correct * * * while interfering with the free exercise of the opposing faction's beliefs" (*First Presbyt. Church of Schenectady v United Presbyt. Church in United States of Am.,* 62 NY2d 110, 116, *cert denied* 469 US

1037; *see also Lightman v Flaum,* 97 NY2d 128, 137, *cert denied* — US —, 122 S Ct 2292; *Commack Self-Serv. Kosher Meats, Inc. v Weiss,* 294 F3d 415). "To permit a party to introduce evidence or offer experts to dispute an interpretation or application of religious requirements would place [the court] in the inappropriate role of deciding whether religious law has been violated" (*Lightman v Flaum, supra* at 137). Here, the appellant seeks to do precisely that by relying on the affidavit of Rabbi Rabinowitz to support his claim that the engagement contract required the husband to submit to arbitration before a rabbinical court.

Accordingly, the order is affirmed insofar as appealed from, with costs.

KRAUSMAN, J.P., ADAMS and CRANE, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.