*932 OPINION OF THE COURT
Sylvia Hinds-Radix, J.
This action was commenced by the filing of a summons and complaint on July 18, 2003 to foreclose a mortgage encumbering the premises at 569 Maple Street, Brooklyn, New York. An order of reference was issued by this court on or about October 15, 2003 and thereafter a judgment of foreclosure and sale was entered by the court. Pursuant to a judgment of foreclosure entered by this court on June 7, 2005, the subject property was scheduled for a foreclosure sale at a public auction held on April 17, 2008. At the auction, Third Equities was declared the successful bidder and purchased the property for $155,000, and it tendered to Referee Trevor Headley, Esq. a down payment of $16,000.
Thereafter, on April 22, 2008, defendant Shelda Ray (Ms. Ray) moved, pro se, by order to show cause with a temporary restraining order for an order canceling the foreclosure sale held on April 17, 2008, staying the transfer of the deed to the property and directing that the “funds be returned to the auctioneer.” Said order to show cause was signed by this court on April 22, 2008 and was made returnable on April 24, 2008. The order provided for personal service on the Referee and on all parties entitled to notice by April 23, 2008. On the return date of Ms. Ray’s order to show cause, an attorney for Third Equities appeared and informed the court that Third Equities was never served with notice of the order to show cause and had just been made aware of the matter by the plaintiff. The court granted Third Equities’ request for an adjournment to respond to the order to show cause.
On April 29, 2008, Third Equities cross-moved for an order (1) permitting it to intervene in this action, and (2) upon such grant of intervention, denying Ms. Ray’s order to show cause.
The court heard oral argument on Ms. Ray’s order to show cause and on Third Equities’ cross motion on June 12, 2008. Thereafter, the court heard further argument on November 11, 2008, after this matter was fully briefed.
In support of her order to show cause to vacate the foreclosure sale and to stay the transfer of the deed, Ms. Ray submitted her own affidavit in which she avers that on April 16, 2008, she paid to Ocwen Loan Servicing Company, plaintiffs agent, “the total sum of $4,000, with $3,500 made to Ocwen before the Auction Sale and $500 following the Auction Sale.” She avers *933 that she was told by a representative of Ocwen that the foreclosure sale would be cancelled before the auction took place and that a forbearance agreement would be entered into and would be sent to her. She also avers that she was told that a forbearance agreement would be prepared whereby she would be given the opportunity to pay the arrears owing under her mortgage. Ms. Ray contends that she relied on the representation made by Ocwen. In further support of her order to show cause, Ms. Ray submits a printout indicating that a payment in the amount of $4,000 was made through MoneyGram to Ocwen on April 16, 2008. Additionally, Ms. Ray submits a stipulation of agreement dated June 11, 2008, entered into between Peter Roach and Associates, EC., attorneys for the plaintiff, and John McDonald, attorney for Ms. Ray. The stipulation agreement provides in relevant part that:
“Plaintiff consents to the cancellation of the auction sale and to the return of the bid deposit [held] by the Referee to the successful bidder with the defendant movant to be given the opportunity to perform the terms and provisions of a proposed forbearance agreement between plaintiff and defendant and to be reduced to a written agreement.
“If the forbearance agreement is satisfactorily performed by defendant with plaintiff, this mortgage loan between plaintiff and defendant is to be reinstated and the foreclosure action to be discontinued with prejudice and the notice of pendent canceled of record.”
The attorney for the lender was also present in court at the hearing and was in agreement with Ms. Ray’s position with reference to her being told that she could make the payments and retain her home. In addition to her agreement with the lender, Ms. Ray also contends that she was not notified of the date, time and place of the foreclosure sale. The court notes that it is well settled that the failure to give proper notice of a sale, as required by RPAPL 231, is a mere irregularity and not a jurisdictional defect (see Key Corporate Capital v Lindo, 304 AD2d 620 [2003]; Marine Midland Bank v Landsdowne Mgt. Assoc., 193 AD2d 1091 [1993], lv denied 82 NY2d 656 [1993]; Norstar Bank v LNP Realty Corp., 216 AD2d 279 [1995]; Amresco New England II v Denino, 283 AD2d 599 [2001]). Absent a showing that a substantial right of a party to participate in the sale was prejudiced, the failure to give proper notice will not require that a sale be set aside (RPAPL 231 [6]; see Key *934 Corporate Capital, 304 AD2d at 620; Amresco New England II, 283 AD2d at 599). Service of the notice of sale is not required on a defendant who is in default for failure to appear (see Bank of N.Y. v Agenor, 305 AD2d 438 [2003]). Further, the purpose of the RPAPL 231 publication requirement is to give notice to all who might become bidders so that fair value can be realized at the sale (see Wayman v Zmyewski, 218 AD2d 843, 844 [1995]).
Further, Third Equities, the claimed successful bidder, moves to intervene in the action. In support of its cross motion to intervene, Third Equities asserts that as the successful bidder for the premises, it has a real and palpable interest in the premises, and will be adversely affected by any judgment allowing the defendant to redeem the premises. It is well settled in the law that a party is permitted to intervene in an action as of right when, inter alia, “the action involves the disposition or distribution of, or the title ... to, property and the person may be affected adversely by the judgment” (CPLR 1012 [a] [3]). The court, in its discretion, may permit a person to intervene, inter alia, “when the person’s claim or defense and the main action have a common question of law or fact” (CPLR 1013). “However, it has been held under liberal rules of construction that whether intervention is sought as a matter of right under CPLR 1012 (a), or as a matter of discretion under CPLR 1013 is of little practical significance,” and that “intervention should be permitted where the intervenor has a real and substantial interest in the outcome of the proceedings” (Sieger v Sieger, 297 AD2d 33, 36 [2002], quoting Perl v Aspromonte Realty Corp., 143 AD2d 824, 825 [1988]). In the instant matter, since Third Equities was the claimed successful bidder at the foreclosure auction sale, it clearly has an interest in the outcome of the case (see CPLR 1012 [a] [3]). Accordingly, that portion of Third Equities’ cross motion seeking intervention only is granted.
Third Equities further argues that Ms. Ray’s order to show cause is defective and should be denied because it was not served upon it as the proposed intervenor. The court finds that argument to be unconvincing in light of the fact that on the return date of Ms. Ray’s order to show cause, the court, after being informed that Third Equities was not served with the order to show cause, adjourned the matter to allow Third Equities the opportunity to respond to the order to show cause, thus granting it the opportunity to intervene and to be heard. In that respect, there can be no claim of prejudice and accordingly, that part of Third Equities’ cross motion is denied.
*935 Third Equities further opposes Ms. Ray’s order to show cause on the ground that Ms. Ray’s right to redeem the property was extinguished upon the sale of the subject premises at the auction pursuant to the judgment of foreclosure. Additionally, Third Equities argues that Ms. Ray has not demonstrated that the foreclosure sale should be vacated. This court disagrees.
Discussion
“It is well settled that the owner of the equity of redemption has a right to redeem [the property] at any time before an actual sale under a judgment of foreclosure” (NYCTL 1996-1 Trust v LFJ Realty Corp., 307 AD2d 957, 958 [2003]). RPAPL 1341 sets forth the requirements that a defendant seeking to redeem property, subject to a foreclosure sale, must fulfill in order to stay the sale, and to exercise his or her right of redemption. RPAPL 1341 states:
“"Where an action is brought to foreclose a mortgage upon real property upon which any part of the principal or interest is due, and another portion of either is to become due, and the defendant pays into court the amount due for principal and interest and the costs of the action, together with the expenses of the proceedings to sell, if any, the court shall:
“1. Dismiss the complaint without costs against plaintiff, if the payment is made before judgment directing sale; or
“2. Stay all proceedings upon judgment, if the payment is made after judgment directing sale and before sale; but, upon a subsequent default in the payment of principal or interest, the court may make an order directing the enforcement of the judgment for the purpose of collecting the sum then due” (see also 78 NY Jur 2d Mortgages and Deeds of Trust § 41 [“Upon a redemption, whether before or pending foreclosure, the mortgagee is ordinarily entitled to receive the whole unpaid principal of the debt secured by the mortgage, with interest, and the costs of the action”]).
"Where a defendant “fail[s] to make a payment into court and to make a motion to stay the sale of the property as required by RPAPL 1341 (2), [the defendant’s] right to redemption expire[s]” (NYCTL 1996-1 Trust, 307 AD2d at 958; see also EMC Mtge. Corp. v Bobb, 296 AD2d 476, 478 [2002] [“Ordinarily, a stay of proceedings in foreclosure to preserve the mortgagor’s *936 right to redeem must occur before the foreclosure sale”]; Green Point Sav. Bank v Oppenheim, 237 AD2d 409, 410 [1997] [finding that foreclosure sale “properly went ahead . . . and was not rendered null and void” where defendant tendered payment at the “eleventh hour, and failed to move to stay the sale (pursuant to RPAPL 1341 [2])”], lv denied 90 NY2d 806 [1997]). “RPAPL 1341 is mandatory in nature, and does not allow for a discretionary interpretation or application” (Green Point Sav. Bank, 237 AD2d at 410). Moreover, “in the absence of fraud, collusion, mistake, or misconduct, a court is without discretion to set aside a sale of foreclosure unless the requirements of RPAPL 1341 are met” (.NYCTL 1996-1 Trust, 307 AD2d at 959 [citation omitted] [holding that the court was precluded from invalidating a sale of foreclosure where the defendant failed to follow the redemption procedures set forth in RPAPL 1341]). Here, Ms. Ray failed to follow the redemption procedures mandated by RPAPL 1341. It is undisputed that Ms. Ray did not make a deposit of any sum into the court, or move the court prior to the subject foreclosure sale for a stay of said sale. Instead, she moved by order to show cause to vacate the sale and to stay the transfer of the deed on April 22, 2008, five days after the foreclosure sale.
However, the issues in this case are whether the sale of her property by the Referee was a mistake as argued by Ms. Ray; whether the mistake was that of Ms. Ray, as argued by the bidder; and whether those issues coupled with other factors in this case compel this court to set aside the sale. The facts in this matter clearly demonstrate that the lender agreed to accept the payments from Ms. Ray and entered into a forbearance agreement with her that was to be forwarded to her. It is clear that Ms. Ray relied upon the conversation and the verbal agreement with the lender to stop the sale of her home and she forwarded money to the lender which was accepted. This conversation is not disputed by the lender’s attorney who in fact confirmed same in court. Further, and strikingly significant, was the conversation between Ms. Ray and Third Equities on the day of the sale. During this conversation, Ms. Ray claimed to have notified Third Equities that she had entered into a payment agreement with the lender and had made payments. This conversation is undisputed by Third Equities. The only dispute between Ms. Ray and Third Equities is whether the conversation between them took place before or immediately after the sale.
*937 Third Equities argues that the mistake was unilateral on Ms. Ray’s part as only Ms. Ray was unclear as to the continued foreclosure sede. The clear intent of the parties and the representation of the lender’s attorney demonstrate differently. Additionally, the property was sold to Third Equities at a bid price of $155,000; the appraisal price of the lender is $440,000. At the request of the court, Third Equities provided an appraisal for the property, which was valued at $295,000.
Third Equities relies on the holding in Guardian Loan Co. v Early (47 NY2d 515, 521 [1979]) which states that the “mere inadequacy of price . . . [standing alone] does not furnish sufficient grounds for vacating a sale.” The argument would have been persuasive if the instant case had not been coupled with the mistakes of the mortgagee who accepted the money from Ms. Ray and failed to notify the Referee, in addition to the fact that on the same date of the Referee’s actions, Third Equities was aware of the situation. This court finds that the Guardian case is distinguishable at best. The instant matter is not devoid of grounds warranting this court not to wear its hat of equity, as was the situation in the Guardian case. Indeed, if ever there was a case for equity, this is it. At a time when homeowners are struggling to keep their homes without the financial means to do so, this homeowner was able to tender the money, without a bailout, to save her home. The court is therefore persuaded by that portion of the Guardian decision, although considered dicta, which holds that “[w]here the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as . . . mistake or . . . overreaching, a court of equity may grant relief’ (id. at 521). The court finds that present in this case. For the above-stated reasons, it is the decision of this court that the foreclosure sale be set aside and the deposit be returned by the Referee to Third Equities.
Accordingly, Ms. Ray’s order to show cause canceling the foreclosure sale held on April 17, 2008 is granted in its entirety.