Stefansky v Kaufman (2024 NY Slip Op 51496(U))

[*1]

Stefansky v Kaufman

2024 NY Slip Op 51496(U)

Decided on November 5, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 5, 2024
Supreme Court, Kings County

Yehuda I. Stefansky, HADASSA STEFANSKY and 
 1541 51ST STREET CONDOMINIUM, Plaintiffs,

against
Eli Kaufman, ARON KAUFMAN and 1545 HOLDINGS LLC, Defendants.

Index No. 511073/2024

Norton & Associates LLC, New York City (Michael E. Norton of counsel), for plaintiffs.
Jacobowitz Newman Tversky, LLC, Cedarhurst (Jonathan Weg of counsel), for defendants.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 3-23.
Upon the foregoing papers, having heard oral argument [FN1]
, and due deliberation having been had, the within defendants' motion is determined as follows.
Background
In this action, plaintiffs allege that defendants materially breached an agreement pursuant to which plaintiffs granted defendants certain limited and temporary access onto plaintiffs' property located at 1541 51st Street Brooklyn, New York, to facilitate defendants' work and construction on the building and premises owned and controlled by defendants at 1545 51st Street, Brooklyn, New York. The two properties are abutting. (See NYSCEF Doc No. 8, complaint ¶ 1.)
It is further alleged by plaintiffs that in November 2022, defendants requested temporary access to plaintiffs' property as described above, which was acceded to. Plaintiffs also agreed to the temporary removal of a fence on their property to facilitate defendants' work. If the work exceeded two weeks, plaintiffs were to be compensated at a daily rate. Defendants were to be responsible for any damages to plaintiffs' property. (See id. ¶¶13-20.)
The work took longer than expected, claimed plaintiffs, and defendants owe plaintiffs the daily agreed-upon rate. Also it is contended by plaintiffs that defendants did not properly reinstall the fence and that defendants' structure's wall encroaches on plaintiffs' property. Causes of action for breach of contract and unlawful trespass are asserted. Plaintiffs seek a permanent injunction and monetary damages. (See id. ¶¶ 21-48.)
Defendants now move the Court for a pre-answer order "(i) pursuant to CPLR §3211(a)(1)(2)(4) and (5) dismissing the complaint in its entirety; or in the alternative; (ii) staying this action pending an arbitration proceeding in a Rabbinical Court pursuant to CPLR §7503; and ([iii]) for such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action" (NYSCEF Doc No. 3, notice of motion at 1.)

 Defendants' Contentions
Defendants concede that the parties in the action were in a dispute over the construction on defendants' property. Around February 15, 2023, plaintiff Hadassa Stefansky served a hazmana [FN2]
on defendants Eli Kaufman and Aron Kaufman to arbitrate the dispute at the Rabbinical Court of Givas Hamorah in Brooklyn on February 26, 2023, but the matter was settled for $8,970. However, someone reached out on behalf of the plaintiffs to inform the defendants that plaintiff Hadassa Stefansky was not happy with the settlement. Defendants and plaintiffs agreed to have the matter heard and resolved by the Beth Din of Tartikov.[FN3]
Email correspondence concerning a date convenient for everyone went back and forth over the course of more than a year. However, instead of confirming a date with the beth din [FN4]
, plaintiffs filed the within action in secular court. (See NYSCEF Doc No. 4, A. Kaufman aff ¶¶ 1-15; NYSCEF Doc No. 5, hazmana.)
Defendants argue that it "is customary and required of observant Jews" that the parties have their dispute heard in a beth din, as originally demanded by plaintiff Hadassa Stefansky and as agreed to by defendants (NYSCEF Doc No. 4, A. Kaufman aff ¶ 17).
After this action was commenced and even after plaintiffs filed opposition to defendants' motion, plaintiff Hadassa Stefansky continued to email concerning possible dates for the arbitration to take place (see NYSCEF Doc No. 19, A. Kaufman reply aff ¶¶ 4-7). The BadatzMishpitei Yisroel emailed plaintiff Hadassa Stefansky on August 26, 2024, asking, "Ms. [*2]Stefansky, please advise when you are available," and she replied on September 1, 2024, "Dates are all OK[.] Will get back later this week. Confirming toen."[FN5]
(NYSCEF Doc No. 21, email correspondence.)
Defendants contend that judicial policy favors arbitration and that the parties herein intended that their dispute be adjudicated in a rabbinical court. In fact, they were emailing back and forth over what date would be convenient. Since the parties agreed to arbitrate, the Court lacks subject matter jurisdiction over this action. Defendants seek dismissal of the complaint. (See generally NYSCEF Doc No. 10, defendants' mem law.)

Plaintiffs' Contentions
Through Hadassa Stefansky, plaintiffs reaffirmed the contentions set forth in the complaint (see generally NYSCEF Doc No. 12, H. Stefansky aff). She insisted, "There is no agreement among the parties which requires the matters alleged in the complaint to be arbitrated" (id. ¶ 11). As for the February 2023 hazmana, she maintained that "in the absence of any agreement requiring them to arbitrate, the Kaufmans were not under compulsion to appear and in fact they did not appear" (id. ¶ 13). Also, "While certain very limited discussions may have occurred, the parties ultimately never agreed to submit this matter to arbitration" (id. ¶ 14). While defendants reimbursed her $8,970, it was solely for "$1000 for an iron gate; $3000 to stain flooring; $4200 for concrete repair fence sink lights; $150 for a camera; $500 closet melamine replaced and paint trim; and $120 for cleaning" (id. ¶ 17). This action seeks damages for other matters related to damage of her property by defendants (see id.).
Regarding the legal issue presented, plaintiffs argue, "In New York, a party may not be forced to submit to arbitration in the absence of an unequivocal and specific agreement and consent to arbitrate which expressly sets forth the specific disputes to be submitted to arbitration. Here there is no arbitration agreement among the parties requiring the claims and causes of action alleged in Plaintiffs' complaint to be submitted for arbitration, either before a Rabbinical tribunal or before a civil panel of arbitrators. Not only do Defendants fail to produce any writing constituting an arbitration agreement, but the Defendants' motion papers also clearly reveal that no such document or agreement exists. Instead, Defendants rely exclusively on certain ambiguous actions of the parties occurring after the various disputes arose. However, while there were some limited discussions over a lengthy period of time concerning the possibility of submitting disputes to a Rabbinical tribunal, ultimately the parties never reached an agreement to arbitrate." (NYSCEF Doc No. 14, plaintiffs' mem law at 1.)

Discussion
An agreement to submit disputes to arbitration is "well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process" (Maross Constr. v Central NY Regional Transp. Auth., 66 NY2d 341, 345 [1985]). "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it. . . ." (CPLR 7501 [emphasis added]).
"A party seeking to compel arbitration must establish the existence of a valid agreement to arbitrate" (DiGregorio v Long Is. Univ., 221 AD3d 780, 781 [2d Dept 2023], quoting Wolf v Hollis Operating Co., LLC, 211 AD3d 769, 770 [2d Dept 2022] [internal quotation marks omitted]). As stated by the Court of Appeals,
It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent "evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes." (Schubtex, Inc. v Allen Snyder, Inc., 49 NY2d 1, 6; see, also, Matter of Marlene Inds. Corp. [Carnac Textiles], 45 NY2d 327, 333-334.) The agreement must be clear, explicit and unequivocal (Matter of Acting Supt. of Schools [United Liverpool Faculty Assn.], 42 NY2d 509, 512; Matter of Lehman v Ostrovsky, 264 NY 130, 132) and must not depend upon implication or subtlety (Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288, 291; Matter of Doughboy Inds. [Pantasote Co.], 17 AD2d 216, 220 [Breitel, J.]). (Matter of Waldron [Goddess], 61 NY2d 181, 183-184 [1984].)
While there may be a reference to arbitration in an agreement, the subject matter must be expressly and unequivocally agreed to, or the agreement must state that it applies to any dispute between the parties (see Rubinstein v C & A Marketing, Inc., 205 AD3d 832 [2d Dept 2022]). In Rubinstein, an employment agreement contained a provision stating, "Third party in case of a disagreement: Rabbi Shlomo Gross (Belze Dayan) or Rabbi Meir Labin" (id. at 833). The Court held, however, that this language did "not expressly and unequivocally establish that the parties agreed to arbitrate the plaintiffs' claims for unpaid commissions or wrongful termination" (id. at 834). "Moreover, this provision ambiguously refers to a disagreement, but does not specify the types of disagreements to which it applies" (id.).
If an arbitration agreement does not refer to a particular subject, there is no clear and unequivocal agreement to arbitrate it (see Qureshi v Vital Transp., Inc., 173 AD3d 1076, 1079 [2d Dept 2019] [accounting, tortious interference with contract and intentional infliction of emotional distress, and breach of contract/tortious interference]; Rosen v Rosen, 172 AD3d 934, 935 [2d Dept 2019] [enforcement of child support award]; Sammarco v Pepsi-Cola Bottling Co. of NY, 1 AD3d 341 [2d Dept 2003] [beverage distribution commercial agreement including arbitration clause did not encompass claim for personal injuries from on-site accident]).
"But as with such provisions in the commercial context generally, the rule is clear that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration" (Bowman v Bowman, 50 NY2d 288, 293-294 [1980] [whether downward modification in support obligations encompassed "Any claim, dispute or misunderstanding arising out of or in connection with this Agreement, or any breach hereof, or any default in payment by the Husband, or any matter herein made the subject matter of arbitration, shall be arbitrated."]). "[W]e should not reflexively attribute to the parties an intention to have every possible dispute go to arbitration" (id. at 294).
Additionally, an agreement to arbitrate is not binding on others unless they evince a clear, explicit, and unequivocal agreement to participate (see Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d 626 [2013]; Blizzard Cooling, Inc. v Park Devs. & Bldrs., Inc., 134 AD3d 867 [2d Dept 2015]).
Nowadays, arbitration agreements are agreed to electronically in the realm of consumer interactions with businesses (see e.g. Brooks v Yang, 216 AD3d 505 [agreement to arbitrate [*3]disputes against rideshare company set forth in hyperlink]). The instant case presents a situation where one set of parties to a dispute claims that an arbitration agreement was embodied in a hazmana sent at the behest of an adverse party and in email correspondence with her, emailing being an electronic form of communication. Did they constitute a written agreement to arbitrate?
The burden of proving that the parties unequivocally agreed to arbitrate all matters between them which are now subject to this lawsuit lies with defendants (see Cusimano v Berita Realty, LLC, 103 AD3d 720, 721 [2d Dept 2013].
The hazmana sent by the Rabbinical Court of Givas Hamorah on January 31, 2023 was addressed to defendant Aron ("Yiddy") Kaufman, requesting that he appear for a Din Torah (arbitration) on February 26, 2023 at 12:30 p.m. Nowhere in the hazmana is it written what the subject matter was to be. (See NYSCEF Doc No. 5, hazmana.) At the time this hazmana was sent, there did not exist a written arbitration agreement between any of the plaintiffs and any of the defendants. Mr. Kaufman did not appear.
The record includes a series of emails starting May 30, 2023, in which arbitration with the Beth Din of Tartikov is discussed. Plaintiff Stefansky wrote at one point in the series of emails that she was "OK with just meeting with the [K]aufmans themselves . . . . or in addition to the beis din . . . or in addition to toen. [W]hatever it takes. My only request from the beginning to was to resolve this is a timely manner. Please take care of this immediately, or else please give me an option of other beis dins to take it to." (NYSCEF Doc No. 21, email correspondence.) This was in September 2023. Thereafter plaintiff Hadassa Stefansky agreed to specific dates. Her emails included the following different statements:
• I've been asking for a date since before pesach! I specifically asked to please take care before busy seasons.
• If you refer back tp our earliest emails and phone calls, you will see that I am only available on Tuesday and Fridays. Morning appointment. I asked to schedule this back in april!!
• I am awaiting a date to be scheduled as soon as possible. As seen below and in all of our previous conversations, I am available on either Tuesday or Friday morning. If necessary I can try for Sunday afternoon. I am not at all available on other days of the week. That is 3 out of 6 days a week! I don't need to have to wait months for a date to be set to resolve this. This is nearing a half a year without even a date yet!!
• Please get back to me with a date in the near future.
• Tuesday October 31 at 11 am works for me. Please confirm.
• Is Oct 31 confirmed?
(Id. [errors in originals].)
As noted earlier in defendants' contentions, in September 2024, plaintiff Hadassa Stefansky agreed in an email to attend an arbitration in September 2024. However, merely agreeing to attend does not include agreement to any specific subject matter.
It is apparent to this Court that while plaintiff Hadassa Stefansky was amenable to arbitrating her disputes with defendants, she never explicitly agreed to arbitrate and, even if the series of emails, combined with a hazmana sent at her initiative, are to be construed as a writing, the emails and correspondence cannot be deemed a valid arbitration agreement due to the lack of an explicit subject matter to be arbitrated. Apparently there is or were more than one dispute between plaintiffs and defendants. One concerned damage to the plaintiffs' property, but then [*4]the parties were in dispute over a fence not being reinstalled properly, defendants' structure encroaching on plaintiff's property, and defendants' non-payment for use of plaintiffs' property. Since the hazmana and email correspondence did not detail which dispute was to be arbitrated, they do not constitute a binding arbitration agreement. Moreover, the January 2023 hazmana appears to have been related to plaintiff Hadassa Stefansky's attempt to be reimbursed for property damage, for which she was reimbursed with the $8,970 check in March; as such the hazmana itself does not constitute an agreement to arbitrate anything else.
The best that can be said about the submitted correspondence is that plaintiff Hadassa Stefansky agreed to agree to arbitration (see Sasson v Reisz, 2021 NY Slip Op 30871[U] [Sup Ct, Kings County 2021]). An agreement to agree is not binding (see Little v County of Nassau, 148 AD3d 797 [2d Dept 2017]).
Moreover, while the evidence submitted by defendants relates to plaintiff Hadassa Stefansky, defendants have failed to produce any evidence that plaintiffs Yehuda I. Stefansky and 1541 51st Street condominium agreed to arbitration or that Hadassa Stefansky possessed authority to bind these other plaintiffs to an arbitration agreement (see Matter of Belzberg, 21 NY3d 626; Blizzard Cooling, Inc., 134 AD3d 867 [2d Dept 2015]).
Inasmuch as plaintiff Hadassa Stefansky did not agree to any specific subject matter to be covered by arbitration, defendants' motion, to the extent it seeks to compel plaintiffs, pursuant to CPLR 7503, to arbitrate in a rabbinical court, must be denied (see Rubinstein, 205 AD3d 832; Qureshi, 173 AD3d at 1079; Rosen, 172 AD3d at 935; Sammarco, 1 AD3d 341).[FN6]
Defendants failed to prove that all three plaintiffs unequivocally agreed to arbitrate all the disputes which are the subject of the complaint in this action (see Cusimano, 103 AD3d at 721).
That branch of Defendants' motion to dismiss the complaint in accordance with CPLR 3211 (a) (1) (defense founded upon documentary evidence), (2) (lack of subject matter jurisdiction), (4) (another action pending), and (5) (arbitration and award, payment, release, and other affirmative defenses) must also be denied. To the extent that these provisions of CPLR 3211 are being utilized to support a claim that the March 2023 $8,970 check reflected a settlement of claims, plaintiffs contend that the check was for payment of certain damage to property and not for anything else. Thus, there exists a dispute over this which cannot be adjudicated on the submitted papers.

Conclusion
Accordingly, it is hereby ORDERED that the within motion of defendants is DENIED in its entirety, and defendants shall serve an answer to the complaint within ten days after service of notice of entry of the within order on them.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:A hazmana is "a summons from a rabbinical court" (Silberman v Farkas, 179 AD3d 407, 409 [2d Dept 2020]). While certain Hebrew and Yiddish words concerning rabbinical arbitration have entered the English lexicon in terms of common usage in legal writing, others have done so less often. This accounts for this Court's italicizing certain terms and others not.

Footnote 3:It appears that another beth din was also discussed between the parties: Badatz Mishpitei Yisroel (see NYSCEF Doc No. 20, correspondence).

Footnote 4:A beth din or beis din is a rabbinical arbitration tribunal.

Footnote 5:A toen is a rabbinical lawyer (see Y.G. v T.K., 59 Misc 3d 1228[A], 2018 NY Slip Op 50756[U], *4 [Sup Ct, Kings County 2016]).

Footnote 6:The Court rejects any argument of defendants' at oral argument that the parties' being Orthodox Jews should be factored into whether there was an agreement to arbitrate. As well, the Court rejects defendant Aron Kaufman's assertion that "this matter should be heard in Rabbinical Court, as the parties agreed as is customary and required of observant Jews" (NYSCEF Doc No. 4, A. Kaufman aff ¶ 17). Whether an agreement to arbitrate has been entered into must be determined by a court under the principles of secular law and without "application of religious requirements" (Sieger v Sieger, 297 AD2d 33, 37 [2d Dept 2002]). This is "[c]onsistent with First Amendment principles" (id. at 36).